## PONTALBA et al. *v.* COPLAND et al.

Where a tract of land is inventoried and appraised in the mortuary proceedings as having a certain depth, and it is subsequently adjudicated to one of the appraisers, without any mention of its depth in the *procès-verbal* of adjudication, the omission cannot be taken advantage of to extend the title beyond the limit assigned to it in the *mortuaria*. The legal presumption is that the officers entrusted with the sale did their duty, and sold according to the inventory and appraisement. In such a case parties claiming under the original purchaser by whom the tract was appraised, will be estopped from claiming any greater depth than he appraised.

No title passed under an inchoate spanish grant. The title remained in the sovereign until a complete grant was issued.

APPEAL from the Parish Court of New Orleans, *Maurian,* J.   *L. Janin,* for the plaintiffs. *Benjamin* and *Micou,* for the appellants. The judgment of the court was pronounced by

ROST, J.* This controversy rose from the conflicting claims of the parties to lands in the rear of the city of New Orleans, the position of which is shown by the plans in the record. There is no controversy as to the respective claims of title, and we may proceed at once to examine the original grants of the parties and the action of the government of the United States upon them.

We will first notice the title of the defendants. They claim under two grants, one made by the french government to *Le Breton,* on the 6th October, 1757, and the other by the spanish government to *B. Macarty,* on the 22d of December, 1795. At the time *Le Breton* obtained the first of those grants, he was the owner of a large tract of land fronting on the Mississippi river, with a depth of forty *arpents* only, and also of another tract of land in the rear of this, on the Metairie road. The object of his application was to obtain the unappropriated lands between the two tracts. It was granted, and he was authorized to extend the side lines of the river tract. In the mortuary proceedings had after his death, the river tract was inventoried and appraised as having a depth of sixty *arpents,* thus adding to the original concession a depth of twenty *arpents,* taken from the concession of 1757. The heirs of *Le Breton* being minors, a judicial sale of this plantation took place, and it was adjudicated to *B. Macarty,* without mention being made of the depth in the *procès-verbal* of adjudication. In the chain of conveyances by which the defendants claim under *Macarty,* the depth of the plantation is no where found. But these omissions cannot extend the title beyond the limit assigned to it in the *mortuaria.* The legal presumption is that the officers entrusted with the sale did their duty, and sold according to the inventory and appraisement; apart from this consideration *Macarty* himself was one of the appraisers, and the defendants are stopped from claiming a greater depth than he appraised. It is not material to enquire whether the remainder of the concession of 1757 was appended to the Metairie road tract. *Macarty* did not acquire it; and, as the extension of the side lines of the river plantation to the depth of sixty *arpents* does not conflict with the plaintiffs' title, the concession of *Le Breton* has no bearing on this controversy.

---

* SLIDELL, J., did not sit on account of relationship to one of the defendants.

The defendants next contend that the grant of 1795 to *Macarty* is a complete grant of all the back lands extending to canal Carondelet, and embracing the plaintiffs' claim. It does not purport, on the face of it, to be a title in form. The *requête* expresses the hope that *Macarty's* application to have the direction of his side lines changed, and to extend them to canal Carondelet, will be favorably received: and, if it should be, the prayer is that the survey of his lands be ordered to be proceeded in and completed in conformity therewith, and that a general plan be made of them, "donandome el dicho canal por termino de mis tierras, y formando un plan general de ellas para hacer constar mis propriedades y obtener *titulos mas en forma*."

The prayer is granted, provided no legitimate opposition be made within six months. What is it that is granted on that condition? Nothing more, clearly, than the prayer of the *requête*, the order for the survey which was to precede the *titulo en forma*. This title is nothing more than a conditional order of survey, unattended with actual possession and never executed. It presents one of the weakest of all equitable claims to land resting on written evidence, rendered still weaker by the facts that two oppositions were made within six months from its date, that the governor caused it to be returned to him, and kept it in his possession without ever deciding upon the oppositions. This claim stood much better upon the testimony of *Pintado*, given in the case of *Fleytas* v. *The Mayor et al.*, 1 Mart. N. S. 430. The grant is not, as stated by the court in that case, as complete an order of survey as could be made.

The title of the plaintiffs is also an incomplete grant, containing suspensive and resolutory conditions, none of which appear to have been performed; and had it been rejected, or not acted upon by the government of the United States, the ground taken by the defendants that, after having remained dormant so long a time it should be presumed to have been abandoned, would have received our serious consideration.

It is an historical fact that, during the colonial existence of Louisiana, grants of land were frequently relinquished by the grantees for the purpose of avoiding the charges which they imposed, and that the lands thus granted were reunited to the national domain. *Bossier* v. *Métoyer*, 5 Mart. 698. When titles have remained in the land office during a long space of time, without the heirs of the grantee having set up any claim to the land they cover, the presumption is strong that they were abandoned; particularly when the same land was subsequently granted to other persons. This claim, however, is differently situated. Acts of ownership under the french and spanish governments are shown; and, in 1806, it was presented to the board of commissioners for confirmation, and confirmed. We may here state that, on the same occasion, *Macarty's* claim under the grant of 1795 was rejected. The commissioners saying "that, if the land had been surveyed for him by order of the *Baron de Carondelet*, (which was not the case,) it must have been on the condition that it was vacant; but that it clearly appears that the whole of this land is covered by grants long antecedent to the period when the land is stated to have been surveyed for the claimant." After the death of *Macarty*, the application for confirmation was renewed, and the claim was finally confirmed, by an act of Congress, of February 28th, 1823.

The original grant of the plaintiffs was at least equal in dignity to that of the defendants. It is anterior in date, and was the first confirmed by the United States. After this confirmation, we have no authority to say that the

PONTALBA
*v.*
COPLAND.

claim had been abandoned; and whether we adopt the rule established by the late Supreme Court in the case of *Calvit* v. *Innis*, 10 Mart. 288, and in the case of *Fleytas*, already referred to, or that recognized by the Supreme Court of the United States in the case of *Choteau* v. *Ekhart*, 2 How. 344, the judgment in favor of the plaintiff must be affirmed.

The Supreme Court of Louisiana were of opinion that the title passed under an inchoate grant. The Supreme Court of the United States hold that it remained in the sovereign until a complete grant issued; and it is undeniable that the legislation of Congress for the adjustment of land titles in Louisiana assumes that construction. We cannot differ from that high tribunal on questions involving the alienation of the public domain, and the interpretation of treaties and acts of Congress. We acquiesce the more readily in the rule they have adopted, on account of the beneficial influence it is calculated to have in the speedy settlement of land titles and the security of property.

The defendants have shown no possession under which the plea of prescription could be sustained; and it is very doubtful whether, before the confirmation by the United States, their title could have formed the basis of the prescription of ten and twenty years.                           *Judgment affirmed.*