SOMMERVILLE, J.
The cities of New Orleans and Baltimore, and certain others claiming with the city of New Orleans, jointly brought this action against the Union Lumber Co., Ltd., to recover a certain square of ground bearing the number 741, bounded by Dixon or (Aglae), Pine, Cortez, and Peach streets, the latter being the New Basin road or canal, in the fourth district of the city of New Orleans.
Plaintiffs claim the square of ground as part of the Livaudais tract, acquired by John McDonogh on February 10, 1836, under titles tracing back to a sale made in the Succession of Broutin, of the Livaudais tract to Pontalba in 1760, by virtue of an order or decree of the Supreme Council of the province of Louisiana, the highest tribunal of the French government in that province.
The defendant sets up title under what is called the Macarty grant, or exchange, overlapping in territorial extent a part of the Livaudais tract, and claimed to be a French concession or exchange of property made by the Baron De Carondelet to A. B. Macarty in 1795.
[1] The titles of plaintiffs and defendant are clearly in conflict; and, as this is a petitory action plaintiffs must recover on the strength of their title rather than on the weakness of that of their adversary.
The title to the Macarty plantation has been several times before this court, and it has been declared insufficient upon which to base a judgment in favor of holders under that title. Fleitas v. Mayor, 1 Mart. (N. S.) 433; Pontalba v. Copeland, 3 La. Ann. 86; Moore v. Pontalba, 13 La. 571.
On the trial of this case, the defendant offered in evidence a document indorsed, “Copy of concession to J. B. Macarty of the 22 of December, 1795,” signed by F. Grima, notary public, which document was lost and missing at the time of the trial of the cases just before referred^ to. The document shows that the so-called grant from the French government in 1795 to Macarty was an exchange of property made by the government with Macarty, and not a grant or patent. But under our view of the case it becomes unnecessary to consider the effect of‘it in tracing defendant’s title to the French government in December, 1795.
It appears that in the year 1821 the owners of the Livaudais and Macarty tracts petitioned the government for grants or patents, and that the same were issued in the year 1823. Act Cong. Feb. 28, 1823, c. 15, U. S. Statutes at Large, vol. 3, p. 727. But in their petition the owners of the Livaudais tract fixed their rear line at 80 arpents from the river, or what is now known as in the vicinity of Broad street, and which did not include the square of ground in controversy. The petition of the owners of the Macarty grant included that square, which was in the rear of the Livaudais tract. Subsequently, in the year 1858, Congress on the petition of the *479 owners of the Livaudais tract confirmed the claim of Livaudais, which included the square or ground referred to, and which had been included in the tract of land already •confirmed to Macarty in 1823. Act Cong. June 7, 1858, c. 119; U. S. Statutes at Large, vol. 11, p. 545.
The Livaudais confirmation was in 1858, while that of Macarty was in 1823.
The judge of the district court held in this case that, as the grant of Macarty preceded in date the grant by Congress to Livaudais, the former took precedence, and excluded the latter grant, and gave judgment for defendant. Plaintiff has appealed.
Plaintiffs in this court contend that they do not rely exclusively upon the confirmation of grant in the year 1858, but that they trace their grant to the French government, which was made in the year 1760.
John McDonogh made this same claim against the United States government on June 15, 1846, in the District Court for the Eastern District of Louisiana. In his petition he claimed a complete and perfect title, and he asked that the title be declared good and valid, and that a patent be ordered to be issued to him. The Supreme Court of the United States, in passing upon the case, in 15 How. 36, 14 L. Ed. 590, said in part:
“Now the title set up by the petitioner is a complete legal title; and, if he can establish the facts stated in Ms petition, his title is protected by the treaty itself, and does not need the aid of an act of Congress to perfect or complete it. For undoubtedly, if the possession of the land has been held continually by the petitioner and those under whom he claims, under the judicial sale made by the French authorities in 1760, the legal presumption would be that a valid and perfect grant had been made by the proper authority, although no record of it can now be found.
“We of course express no opinion as to the sufficiency of the evidence to maintain the complete and perfect title claimed in the petition. That question is not before us on this appeal; for, as the district court had no authority to decide upon it, the decree must be reversed for want of jurisdiction, and the petition diSmissed.”
And the suit was dismissed for want of jurisdiction in the district court, as the district court was vested with jurisdiction only over inchoate titles emanating from the several governments which had had control of the territory of Louisiana, and not the complete legal title alleged upon by complainant.
In their petition plaintiffs allege upon the confirmation of title by act of Congress adopted June 7, 1858, although they have offered evidence going to show that their title originated in a sale made in the Succession of Broutin to Pontalba in 1760; and they argue that the sale made in the Succ. of Broutin at that time was equivalent to a patent or grant from the French government, or that at that time that there was a presumed legal title; and they also refer to a report made by the register and receiver of the land office for the Eastern District of Louisiana, of date November 11, 1837, in which it is said:
“This document [the recitals in the petition of McDonogh] is the most perfect title that could be issued; it is fully equivalent to a patent [and it is indeed, in itself, a patent] as the Supreme Council of the province was at the head of the land office, granted the land, issued patents.”
But Congress did not confirm McDonogh’s title on the report of the register and receiver. The confirmation was made in 1858.
[2] And an order or decree of the Supreme Council of the province of Louisiana, in the Succession of Broutin, was not an act of the government of France. The council had no authority to grant patents to public lands while sitting as a judicial tribunal. The Supreme Council, in the Succession of Broutin, was not attempting to sell or grant public lands; it was there disposing of private property belonging to the Succession of Broutin. And, indeed, McDonogh had petitioned Congress to confirm his inchoate title in 1858, *481 just as Livaudais had done in 1821 with reference to that portion of the tract 80 arpents back front the river.
In passing upon this very question, the Supreme , Court of the United States said in the case of U. S. v. Ducros, 15 How. 38, 14 L. Ed. 591, where the appellees claimed to be the owners of certain lands which had been adjudicated in a judicial proceeding before Baron De Carondelet to the widow of Toutant Beauregard, which was during the time of the French domination in Louisiana:
“The proceedings before Carondelet in 1793, in the settlement of the estate of Louis Toutant Beauregard, could not be construed as a confirmation of the French grant, from the mere circumstance that in the inventory, decedent’s estate is described as running back to the lake. Carondelet could not be said to confirm, in his political capacity, a title which is not even stated in the mere formal proceedings before him in his judicial capacity.”
[3] And so when Pontalba bought the property in question February 9, 1760, in the Succession of Mr. and Mrs. Broutin, which sale was made by Charles Marie Delalande Dapremont, councilor judge of said court, commissioner nominated to that effect, Jean Baptist Raguet, councilor of said council acting as the king’s Attorney General, Pontalba did not acquire a patent from the crown of France. He simply acquired whatever title the Broutins had, and which was sold in their succession. Such an act of sale of lands belonging to private individuals, in probate proceedings, cannot possibly be construed into an action by the government. Such title cannot be said to have emanated from the government; and, if it could have borne such construction it would have been an inchoate title, and not a patent. Title did not pass under an inchoate grant. The title remained in the sovereign until a complete title was granted.
[4] In such case, that of an inchoate title, the claimant was given six months time in which to record his claim with the United States commissioner. Act Cong. April 25, 1812, c. 67, 2 Stat. 713. This time was several times extended by subsequent acts. This notice by plaintiff’s authors was not filed with the commissioner, within the time therein limited, or within the various extensions of time made subsequent to the adoption of the act. It was never filed.
These acts expressly provide that if claimants shall neglect to give notice of their claims in writing to the proper officers, or to cause to be recorded the written evidence of them, all their right, so far as the claim is derived from the government, shall become void, ana rorever tnereatter be barred as evidence on the trial of title to said lands in any court of the United States against any grant which thereafter may have been derived from the United States. Section 4.
The alleged grant, relied upon by .plaintiffs, of date 1760, cannot therefore be received by the court in evidence in support of plaintiffs’ title (Lobdell v. Clark, 4 La. Ann. 99,) against defendant’s confirmation of title by Congress in 1823.
[5] As petitioners claim under title, confirmed by act of Congress in June 7, 1858, which was subsequent in date to that of the confirmation by Congress of defendant’s title in 1823, the defendant became the owner of the property under the first confirmation by Congress, which was in 1823. Pontalba v. Copland, 3 La. Ann. 86; Duplessis v. Miller, 6 La. Ann. 638; Chouteau v. Eckhart, 2 How. 344, 11 L. Ed. 293.
[6] As to the presumed legal title of plaintiffs based upon an ancient and long-time possession of the'property, there is not sufficient evidence of such occupation and possession as owners. Plaintiffs on their briefs say that this tract of land in which the square of land in controversy is located is in a great part uncultivated and imperfectly drained. And the authors of plaintiffs in *483 title in an act of sale in 182S fixed their rear boundary line at 80 arpents from the river, which excluded the square of ground ■in question; and, in asking for confirmation of title in 1821 McDonogh did not claim to be owner of, or in possession of, the portion of the property beyond the 80 arpent line. Government surveys, official city maps, and other documents place the rear line of the Livaudais tract about or near Broad street, which was and is the dividing line between the Livaudais and Macarty tracts. Early ownership and possession of the property involved were not proved by plaintiffs.
The judgment appealed from is affirmed, with costs.