(58 South. 1019.)

No. 18,937.

WILFERT v. DUSON et al.

(June 4, 1912.)

*(Syllabus by the Court.)*

1. REAL ACTIONS (§ 7*)—PETITORY ACTION—EVIDENCE.

   Plaintiff, in a petitory action, must recover on the strength of his own, and not on the weakness of defendant's, title. C. P. art. 44.

   [Ed. Note.—For other cases, see Real Actions, Cent. Dig. §§ 21–25; Dec. Dig. § 7.*]

2. DEEDS (§ 38*)—DESCRIPTION.

   Title to real estate must describe the land with reasonable certainty.

   [Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 65–79; Dec. Dig. § 38.*]

3. VENDOR AND PURCHASER (§ 230*)—BONA FIDE PURCHASER—NOTICE.

   A vague, uncertain, and indefinite description in a title deed will not be notice to a purchaser in good faith.

   [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 502–512; Dec. Dig. § 230.*]

4. ADVERSE POSSESSION (§ 84*)—PRESCRIPTION—GOOD FAITH.

   Good faith is always presumed in matters of prescription. It is sufficient if the possession has commenced in good faith; and, if the possession should afterwards be held in bad faith, that shall not prevent prescription. C. C. 3481 and 3482.

   [Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 488–500; Dec. Dig. § 84.*]

Appeal from Eighteenth Judicial District Court, Parish of Acadia; Wm. Campbell, Judge.

Action by George Wilfert against W. W. Duson and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Lewis & Lewis, for appellant. Story & Pugh and Smith & Carmouche, for appellees.

SOMMERVILLE, J. This is a petitory action, in which the plaintiff asks that he be decreed to be the true and lawful owner of a certain tract of land, described to be:

"The S. W. portion of section 38, Tp. 7 S., of range 1 W., bounded on the north by lands belonging to Francois Sebastian Dupre, on the east by portion of section 38, on the west by land formerly belonging to Francois Dupre, Jr., or sections 8 and 17, and on the south by sections 16 and 17."

And he asks that his title to the same be quieted by judgment of court. Plaintiff further represents that the two defendants, W. W. Duson and W. E. Jelks, claim to own certain portions of said land, but without any warrant in law or in fact, and that one Frank Williams, claiming to be the lessee of the said Jelks, is trespassing and depredating upon the timber of the said tract of land.

Defendants, Duson and Jelks, answer and set up title in themselves, and ask that plaintiff's suit be dismissed at his cost. The plaintiff and the defendants all claim title from the same original author. It appears from the evidence that Pierre Richard acquired the whole of the irregular section 38, containing some 677 acres, from the United States government in April, 1811. The heirs of Richard failed to pay taxes on the land, and the same was seized and sold by the tax collector to Francois Dupre, Jr. Francois Dupre, Jr., sold to his father, Francois Sebastian Dupre, that portion of section 38 which is in dispute here. In the act of sale, of date October 29, 1878, to Francois Sebastian Dupre, it is described as:

"The southwest portion of a certain piece of land situated in Facquetaique, St. Landry, containing about one hundred and twenty-five acres, more or less, bounded north by vendor, east by school land, south by same, and west by Francois Sebastian Dupre, père."

Francois Sebastian Dupre, May 8, 1879, sold to Vitas Wilfert, the father of plaintiff, describing the tract or property as:

"The southwest portion of a certain piece of land situated in Facquetaique, parish of St. Landry, containing about one hundred and twenty-five acres, more or less, bounded north by vendor, east by school lands, south by same, and west by Francois Dupre, fils."

The heirs of Vitas Wilfert sold to their brother, the plaintiff in this cause, March 19, 1895, describing the land as:

"A certain tract of prairie and woodland, situated in Facquetaique, in Acadia parish, state of Louisiana, being in section nine and sixteen, township seven, range one west, and being a portion of the Louis Richard tract, and containing one hundred and twenty-two acres, bounded as follows: Bounded on the north by the lands of Chattie Rose, bounded on the south by public school lands, bounded on the east by the gully, and bounded on the west by lands unknown."

The descriptions of the property given in the three acts of sale are vague, indefinite, uncertain, and misleading. The recordation of them in the proper office was not notice to third persons, who subsequently acquired the whole of section 38 from Francois Dupre, Jr.

February 21, 1880, Francois Dupre, Jr., sold the whole of section 38 to Daniel Rose. September 6, 1887, Daniel Rose sold the whole of said section to Joseph Block. January 19, 1889, Joseph Block sold the whole of said section to Dan Rose. November 8, 1892, the succession of Daniel Rose sold the section to G. L. Dupre. He sold the same to Chattie Rose. On November 1, 1904, W. W. Duson, one of the defendants, acquired title to the whole of said section by mesne conveyances. December 3, 1906, W. W. Duson sold to W. E. Jelks, one of the defendants, 197 acres of the section. This, in part, forms a portion of the property claimed by plaintiff in this suit.

The description of the property under the titles from Francois Dupre, Jr., to Francois Sebastian Dupre, and from Francois Sebastian Dupre to Vitas Wilfert, is so meager, vague, uncertain, and indefinite that it does not serve to fix the location of this land sold to any degree of certainty. The number of the section in which the land is located is not even given. The recordation of these acts was insufficient to serve notice upon any person who subsequently pur-

chased from Francois Dupre, Jr., the whole of section 38, or any portion thereof. And the title from Wilfert heirs to John Wilfert is even misleading; for it places the land in sections 9 and 16, instead of section 38.

J. J. Naff, civil engineer and surveyor, witness for plaintiff, when examined with reference to the description contained in the title deeds of plaintiff, said, on cross-examination, in answer to the following questions:

"Now, Mr. Naff, disregarding anything you heard, and disregarding what you had in your possession, would it be possible to locate that land? A. No, sir; I could not locate it. Q. You could not locate it in this description? A. No, sir. Q. You don't know where the land is from that sale do you? A. Not upon that sale; that does not indicate the section. You would have to have something to show the boundaries. * * * Q. Now, you say you got information on the ground, from people on the ground; who were they? A. A number of people; the two Mr. Wilferts, who were present there, and some other people. I don't remember their names; and they stated that that was the land. I didn't know the description, and they told me it was the intention of their father (old man Wilfert) to buy to this bayou. Q. Then the map you have offered here was not made from the description of the deed, but from information obtained? A. From actual survey and information obtained and my judgment on what should be the line. * * * Q. Now, then, with the deed from Francois Sebastian Dupre to Vitas Wilfert, would you be able to locate this land in the middle of the section without any other knowledge? A. This does not show, according to the section number, how it is located. Q. Can that description in that deed I have shown you from Francois Sebastian Dupre to Vitas Wilfert—were you enabled to locate that land in section 38? A. Not in that one sale alone. * * * Q. Did you not say, in answer to the question propounded by me, or by Mr. Lewis, that when you first went out there you laid it [the land in question] off in a square? A. Yes, sir. Q. Then, before you went out on the ground, you did get a square piece in the southwest under the description in the deed? A. Yes, sir; I located the land in the southwest portion and assumed it was square, subject to any physical conditions I might find. Q. There is nothing said in the deed about the bayou? A. No, sir; nothing said in the abstract about it. I came to the conclusion that the bayou must have been the north boundary, and, after measuring the area, that tallied so nearly with the area given in the sale, together with the verbal testimony of those who were present at the time the sale was made, and who were interested, I concluded the bayou must be the west line; the area was there

of the land claimed. and there were no other lines indicating that the land had been surveyed in any other manner."

The piece of land claimed by plaintiff is not a square in one corner of the section; but it is an irregular piece extending nearly across the southern boundary of the section.

The testimony of John D. White, surveyor, which was offered by the defendant, is to the same effect. He testified, in part, as follows:

"Q. Now, if these two—with those two marks, could you locate that land, even considering it was a part of the Louis Richard grant? Could you locate it by this description, as attempted to be done by the plaintiff herein? A. No; those descriptions you would naturally look for as the school land, unless there were other evidence to the contrary. * * * Q. Now, in this deal from Francois Sebastian Dupre to Vitas Wilfert, described as the southwest portion of a certain, piece of land, situated in the Prairie Facquetaique, parish of St. Landry, containing 125 acres, more or less, bounded north by vendor, what would that indicate? A. It would indicate that the vendor had other lands,"

—whereas Francois Sebastian Dupre did not own other lands in that neighborhood. He also testified that the descriptions in the deeds of plaintiff would naturally suggest a square piece of ground.

Plaintiff has never lived on the land. He has been domiciled in New York during the past 42 years. His father, who bought in 1879, never lived on the land, nor has any member of his family. Anthony Wilfert, brother of plaintiff, testified that Vitas Wilfert, the father, cultivated the place one year, about 1890, the year he died; and that his mother afterwards rented it for one or two years to truck farmers.

The evidence also shows that Madame Rose, who was the wife of Daniel Rose, and who bought the whole of section 38 in 1890 from Francois Dupre, Jr., and who sold to Joseph Block September 6, 1887, and then repurchased from Block January 19, 1889, took actual and physical possession of the land she bought, and retained possession to November 8, 1892. She put a fence entirely around section 38, and cultivated a part of it. The Roses claimed the land which the Wilferts were claiming. This must have been after Mr. Wilfert's death, in 1890, and before the time the Roses sold in 1892. Anthony Wilfert says it was done shortly after his father's death. He also says that his father had previously put a fence around that portion of the land which was being cultivated by him, but that he (Anthony), after about three years, took it down and put it to other use. He gives as his reason for taking the fence down that "we did not work the field." He further says that "we let it [said land] lay cold until we settled the estate." The Wilferts do not appear to have exercised any of the rights of ownership since that time, about 1892, until about the time that this suit was filed in March, 1909.

The testimony for defendants shows that they have a clear and valid title to the whole of section 38 since the year 1880; that one of their authors in title, Dan Rose, went into actual and physical possession, and exercised rights of ownership to the whole of said section, including the land which was claimed by Vitas Wilfert, the author of plaintiff's title.

The plea of prescription of 10 years was properly sustained.

The judgment appealed from is affirmed.