No. 2620

Second Circuit

RHODES v. BROADWAY

(April 16, 1929.  Opinion and Decree.)
(May 8, 1929.  Rehearing Refused.)

Rusca & Cunningham, and H. Lester Hughes, of Natchitoches, attorneys for plaintiff, appellee.

Boone & Boone, of Many, attorneys for defendant, appellant.

REYNOLDS, J.  Defendant appeals from a judgment decreeing plaintiff to be the owner and entitled to the possession of two tracts of land situated in Natchitoches parish, La., described as follows, to-wit: (1) A certain strip of land extending along the east side of the N. E. ¼ of the S. W. ¼ of section 20, township 7 north, range 9 west, containing 2 48/100 acres; and, (2) a tract of land situated in the corner of the N. W. ¼ of the N. W. ¼ of the S. E. ¼ of the same section, township, and range, containing 3 acres—and for $20, as rent of the land for the years 1924 and

1925, and for $50, as the value of a fence appropriated and destroyed by him, with legal interest on both amounts from judicial demand.

Plaintiff deraigns title to the land as follows:

To the first described tract:

United States to J. C. Monasco; patent, dated January 14, 1889; recorded in Book 146 at page 236 of the conveyance records of said parish; conveying S. W. ¼ of section 20, township 7 north, range 9 west.

J. C. Monasco to J. E. Webb; sale, dated December 26, 1900; recorded in Book 104 at page 362 of said records; conveying S. W. ¼ of section 20, township 7 north, range 9 west.

J. E. Webb to Mrs. Susan Rhodes; sale, dated May 18, 1905; recorded in Book 116, page 157, of said records, conveying the S. W. ¼ of section 20, township 7 north, range 9 west.

Mrs. Susan Rhodes to Lit Rhodes; sale, dated February 1, 1910, recorded February 15, 1910, in Book 128, at page 148, of said records, conveying the S. W. ¼ of section 20, township 7 north, range 9 west.

And to the second described tract:

W. H. Matthews to Lit Rhodes; sale, dated February 11, 1919, recorded February 15, 1919, in Book 144, at page 242, of said records, conveying: "Three acres of land in the corner of the N. W. ¼ of N. W. ¼ of S. E. ¼ sec. 20 T. 7 R. 9, together with all of the improvements thereon, situated in parish of Natchitoches."

Defendant deraigned title as follows:

W. H. Matthews to J. E. Broadway; sale, dated May 21, 1923, recorded May 21, 1923, in Book 151, at page 354, of said records, conveying:

"The east half of the Southwest quarter of the Northwest quarter of Section 20 Twp 7 N. R. 9 West, containing 20 acres, more or less, in Natchitoches parish, Louisiana."

This deed, he alleges, inadvertently misdescribed the land bought and sold; that what he intended to buy and his vendor to sell was the corresponding part of the S. E. ¼ of S. W. ¼ of the same section, township, and range, and he called his vendor in warranty, and his vendor answered admitting that what he intended to sell and defendant to buy was the E. ½ of the S. E. ¼ of S. W. ¼ of section 20, township 7 north, range 9 west, and declared that he was willing to execute a new deed to defendant correcting the error.

And defendant, in his answer, asked that the deed from his vendor to him be reformed accordingly, and that he be decreed to be the owner and entitled to the possession of the E. ½ of the S. E. ¼ of S. W. ¼ of section 20, township 7 north, range 9 west, instead of the corresponding part of the S. W. ¼ of N. W. ¼ of the same section, township, and range.

The judgment rejects defendant's demand against his warrantor.

As to the second described tract, defendant bases his title on a sale from W. H. Matthews to him dated May 21, 1923, recorded the same day in Book 151, at page 361, of said records, conveying:

"The west half of the Southeast quarter of Section 20 Township 7 North Range 9 West, containing 80.00 acres, more or less; being the same property acquired by the vendor from J. E. Webb."

I.

As to the 2 48/100 acres in the N. E. ¼ of S. W. ¼ of section 20, township 7 north, range 9 west, that the judgment de-

crees plaintiff to be the owner and entitled to the possession of, plaintiff shows an unbroken chain of title going back to the United States government, and, in addition thereto, was in actual possession of the land and had it under fence and in cultivation when evicted by defendant.

Defendant shows no title whatever to the land. Conceding that, as alleged by him, the sale from W. H. Matthews to him of May 21, 1923, inadvertently described other land than that bought and sold, it was neither alleged nor proved that what Matthews intended to sell and he to buy included the land awarded plaintiff.

The land described in the sale from Matthews to defendant is:

"The east half of the Southwest quarter of the Northwest quarter of Section 20 Twp 7 N. R. 9 West, containing 20 acres, more or less, in Natchitoches parish."

In his answer and call in warranty he says the deed describes the land as:

"E. ½ of S. E. ¼ of N. W. ¼ Sec. 20 Tp. 7 N. R. 9 W."

—an altogether different tract of land from that the deed does describe.

In his prayer he asks that the deed from Matthews to him be reformed so as to describe the E. ½ of S. E. ¼ of S. W. ¼ of section 20, township 7 north, range 9 west.

Conceding that what Matthews intended to sell and defendant to buy was the E. ½ of the S. E. ¼ of the S. W. ¼ of section 20, township 7 north, range 9 west, as the judgment appealed does not award plaintiff title or possession of any part of this land and plaintiff has not appealed from the judgment nor answered the defendant's appeal, we are unable to see wherein defendant was prejudiced by that part of the judgment decreeing plaintiff to be the owner of and entitled to the possession of the 2 48/100 acres in the N. E. ¼ of S. W. ¼ of section 20, township 7 north, range 9 west.

II.

As to the three acres in the corner of the N. W. ¼ of N. W. ¼ of S. E. ¼ of sec. 20, township 7 north, range 9 west, both plaintiff and defendant deraign title from a common author, but that of plaintiff is prior both in date of execution and date of registry, and while that part of the description "three acres in the corner" is not as definite as it might have been, yet as plaintiff's title was on record and the land under fence and under cultivation and in his actual, physical possession when defendant bought, we think the deed sufficiently identified the land covered by the deed to put defendant on notice that it belonged to plaintiff. Croom vs. Noel, 143 La. 189, 78 So. 442.

Plaintiff testified that he was in actual possession of the land even for a year and a half before he purchased, and had cleared it up and put a fence around it so as to have it under the same fence with his land situated in the S. E. ¼ of section 20, township 7 north, range 9 west.

J. E. Webb, one of the vendor's in defendant's chain of title, testified:

"Q. Do you know the three acres in the N. W. ¼ of N. W. ¼ of S. E. ¼?

"A. I do.

"Q. What was the physical location of the three acres?

"A. Do you mean the boundary line of the three acres?

"Q. Was there any natural mark there?

"A. The creek made the boundary line mighty near to the line. It divided Lit's place. The creek made a bend and went nearly in to the line, the north line, running east and west. It cut it off from the other land; that is, the creek cut it off.

"Q. It was cut off by the creek?

"A. Yes, sir.

"Q. Do you know, as a matter of fact, that Lit Rhodes had been in possession of the three acres?

"A. I do.

"Q. Did you know it before the alleged accession by Broadway?

"A. I did.

"Q. It has been known in the neighborhood?

"A. All over the country.

\*     \*     \*

"Q. What creek is this that bounded this?

"A. Sandyburb.

"Q. How much of Mr. Broadway's land was on the west side of Sandyburb creek?

"A. After the three acres was took off?

"Q. Yes?

"A. That was all on the west side of the creek.

"Q. That was the only land that was in this quarter section on the west side of Sandyburb creek?

"A. Yes.

"Q. Was it next to the north line?

"A. It was on the north line.

"Q. Right next to it?

"A. Right in the corner; in the northwest corner.

"Q. How did it lie?

"A. You mean how was it bounded?

"Q. Was it a long strip?

"A. Look—(Hereupon the witness drew a diagram)."

But defendant insists that the description of the three acres was too vague to identify the land, and that the deed, though registered, was not notice of plaintiff's title.

We deem it unnecessary to decide this question, for the reason that it were necessary defendant had been in good faith in his purchase for the defense to be available. Wilfert vs. Duson, 131 La. 21, 58 So. 1019.

Defendant's own testimony shows that he was not in good faith. He testified that he knew the creek cut the three acres off from the rest of the quarter section and that plaintiff had bought and was in possession of it. He testified:

"Q. You knew it was cut off?

"A. Yes.

"Q. You knew also that Lit was in possession of it?

"A. I suppose he was in possession.

\*     \*     \*

"Q. You know Mr. Hughes?

"A. I have seen him.

"Q. He passed the act of sale?

"A. Yes.

"Q. Didn't you ask Mr. Hughes in the office to go to the records in the court house and see whether that Matthews deed called for 77 acres or 80 acres, and didn't he come to the court house and look?

"A. He came to the court house, but I didn't ask him; but they made the reservation, and I told him to hold on a minute, and he said 'what is the matter,' and I said, that don't look like the description, I don't like the description, and I said there is not any three acres reserved in the title; and he said, 'what are we going to do about it,' and I said, I can't accept any deed like that, and he said 'may be I had better go' or 'I will go to the court house,' and he said 'there is no reserve in the Matthews deed.'"

On cross-examination he testified:

"Q. As a matter of fact, did you know who cleared the land on both sides of the fence?

"A. It was Rhodes, I suppose; it was supposed to be his.

\*     \*     \*

"Q. Counsel asked you something about the sale of this three acres of land in the northwest corner of the northwest quarter of the southeast quarter. When did you first learn anything about the three-acre sale to anybody else?

"A. When I went to have the deed made.

"Q. To this piece?

"A. I believe Mr. Clark was talking to me about it a few days before I bought it and got the deed.

"Q. And when you got to Mr. Hughes' office, what was it that took place?

"A. When he gave in the numbers of the land—

"Q. Who?

"A. Mr. Matthews; and he said 'three acres reserved in the northwest of the

northwest'; and I told him to hold on a minute, and I did not like this description.

"Q. You mean the description of the land?

"A. Yes; and he said 'why,' and I said 'there is no reserve made in the land when I bought it'; and I went against the deed with the reserve in it."

At that time plaintiff's deed to the three acres had already been on record more than four years.

It would therefore appear that defendant insisted that the three acres be included in the description of the land he was buying from Matthews, although well aware that Matthews had already sold the three acres to plaintiff.

Not to award plaintiff the land would be to permit defendant to profit by his own wrong.

The district court allowed plaintiff $22 as rent of the land for the years 1924 and 1925 and $50 as the value of the fence around the land appropriated or destroyed by defendant. The award of judgment for these amounts is well supported by the evidence.

The district court rejected defendant's demands in warranty against his vendor, and he asks that in the event the judgment appealed from be affirmed that he be awarded judgment against his warrantor.

"If in case of eviction from a part of the thing, the sale is not cancelled, the value of the part from which he is evicted is to be reimbursed to the buyer according to its estimation, proportionately to the total price of sale." Civil Code, art. 2514.

The price of the sale was $800, or $10 per acre. Defendant has been evicted from three acres of the land bought, and is therefore entitled to recover from his warrantor three-eightieths of the price, or $30.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended so as to award defendant J. E. Broadway judgment against his vendor and warrantor in the sum of $30, with legal interest thereon from judicial demand, and that in all other respects the judgment appealed from be affirmed. The warrantor to pay the cost of this appeal.

———

WEBB, J. I respectfully dissent in so far as the judgment in the petitory action is affirmed, as, in my opinion, the description of the property is insufficient, which could not under the pleadings and evidence have been made certain, and I am of the opinion that the petitory action should have been dismissed as of nonsuit. McManus vs. Stevens, 10 Ann. 177; Wilson vs. Marshall, 10 La. Ann. 329; Williams vs. Kelso, 7 La. 406.