ST. PAUL, J.
 

 The case is thus stated by the Court of Appeal: •
 

 “On April 4, 1921, E. B. Tatum sold a tract of land, consisting of a house and 12 acres, to J. O. Woodward for a consideration of $50 cash and a note of $1,467.65 due November 1, 1921. The note was made payable to the order of E. B. Tatum, or bearer, and was purchased by Barham & Co. before maturity.
 

 “On November 29, 1921, Barham & Co. instituted foreclosure proceedings for the collection of said note in the district court of Lincoln parish. Whereupon AVoodward made overtures to
 
 d.
 
 S. Jeffries to take over the property for the debt. On December 15, 1921, the two went to Ruston to ascertain the exact amount of the note (with interest, attorney’s fees, and costs), and, after consulting C. B. Roberts, attorney for Barham & Co., they found the amount to be $1,634.34. Deciding that the property was ■ft'orth that amount,
 
 Jeffries gave Roberts a check for said amount.
 
 Across the face of the check is written ‘Payment in full of Barham & Co. v. J. O. Woodward, No. 6043.
 

 “Jeffries, Woodward, and Roberts all testify that the check was given for the note; but,.the note being attached to the suit, Attorney Roberts told Jeffries that he could not deliver it until he had secured an order from the court to withdraw it from the files; that as soon as court met he would dismiss the suit, obtain the order, and deliver the note. Roberts then called his clients over the phone to get their consent and to find out if Jeffries’ cheek was good for the amount.
 

 “Upon being informed of the trade, Barham & Co. immediately on the same date wrote an order to the clerk to cancel the mortgage, as the note, their property, had been paid. And some time thereafter the clerk made the cancellation.
 

 "On the same day, after giving the check to Roberts (December 5, 1921), Jeffries and Woodward went to the clerk's office and had him draw a deed to the property from AVoodward to Jeffries,
 
 in which the consideration was recited as being $1,634-34 cash, receipt of which was duly acknowledged by Woodtoard.-
 
 (Italics ours.)
 

 Meanwhile, to wit, on November 12, 1921, W. K. Henderson Iron Works & Supply Company obtained a judgment against T. J. & J. O. Woodward for $1,300, with interest, attorney’s fees, and costs, which judgment was duly recorded in the Mortgage Records of Lincoln parish whilst the aforesaid property was still in the name of J. O. Woodward. Execution duly issued thereupon, and some personal property .was seized and sold, and the amount realized therefrom credited on the judgment. And, having given the notices required by law as a condition precedent, Henderson thereupon instituted this hypothecary action against the property for the balance due on the judgment.
 

 “Jeffries answered by setting up the facts above detailed, and averred that, having -purchased the note which was secured by a vendor's lien and mortgage on the properly from the holders thereof-, he had been subrogated to their said rights by agreement and by operation of law, and that his privilege thus derived outranked that of Henderson; and he prayed that it be so recognized, and, in case of sale, that he be paid by preference and priority.
 

 “He also filed a rule on Henderson, and on Barham & Co. and the clerk, to show cause why the cancellation of the mortgage, made without his knowledge or consent, should not be erased and set asidé. The clerk answered and, attached the order given to him by Barham & Co. to his answer. Barham & Co. answered, admitting all the. allegations in the rule, and that said cancellation should be erased and the mortgage and privilege restored to the same status it had before the erroneous cancellation was made.
 

 “Henderson filed an exception of no cause of action and plea of estoppel, and, in the alternative, answered the motion -and admitted the cancellation, but denied that Jeffries ever had any lien or privilege on the land, and averred that in any event it was extinguished by confusion when mover took title to the 'land.
 

 “On the issues as thus made up the parties went to trial, which resulted in a judgment for plaintiff (Henderson) maintaining the hypothecary action, from which judgment defendant (Jeffries) has appealed.”
 

 II.
 

 The judgment of the Court of Appeal was as follows:
 

 “For these reasons (the reasons assigned) it is ordered, adjudged, and decreed that the judgment of the lower court be reversed and
 
 *623
 
 set aside, and the defendant
 
 G.
 
 S. Jeffries is decreed to have a vendor’s lien and privilege on the property sued for to the amount of $1,634.-34, with- 8 per cent, interest from December 5, 1921, and that, in case the property is sold, hb be paid by preference and priority that amount; costs of both courts to be paid by plaintiff and appellee.”
 

 III
 

 Plaintiff, relator here, complains that the Court of Appeal erred in receiving (i. e., considering) parol evidence to show the true facts of the conveyance by Woodward to Jeffries, thus contradicting the recital of the deed that the consideration thereof was
 
 cash,
 
 and to that end relies on Revised Civil Code, art. 2276 (formerly 2256), reading as follows:
 

 Article 2276 (2256): “Neither shall parol evidence be admitted against or'beyond what, is contained in the (written) acts. * * * ”
 

 But already as far back as Finley v. Bogan, 20 La. Ann. 443, this court had said:
 

 “The article 2256, C. C. [now R. C. C. 2276], contemplates the parties to the act and their representatives, and not third persons. * * * This rule is too well settled to be now controverted.”
 

 And the well-settled jurisprudence, which prevails universally, is thus stated in Corpus Juris, vol. 22, pp. 1292, 1293, Verbo, Evidence, § 1725:
 

 “The rule excluding parol evidence to vary or contradict a written instrument applies only in controversies between the parties to the instrument and those claiming under them. It has no application in controversies between a party to the instrument on the one hand and a stranger to it on the other. - * * * ”
 

 And it has been held by this court that—
 

 “The true cause [consideration] of a contract may be shown by any legal evidence, oral or written, and the evidence adduced for that purpose never can be considered as contradicting the act.” Delabigarre v. Second Municipality, 3 La. Ann. 230, citing C. C. 1888, 1894 (now R. C. C. arts. 1894, 1900).
 

 Also:
 

 “The real cause and consideration of a written contract involving a transfer of immovable property may be shown by parol evidence, although it appears that the real consideration was different from the one expressed in the contract.” Jackson v. Miller, 32 La. Ann. 432.
 

 See, also, Brown v. Brown, 30 La. Ann. 966.
 

 Hence we conclude that the ruling in Chaffe v. Ludeling, 34 La. Ann. 966, and Abbeville Rice Mill v. Shambaugh, 115 La. 1047, 40 So. 453, is out of harmony, not only with the general jurisprudence of the country, but also with the settled jurisprudence of this state, and with the statutory provisions of the Civil Code (R. C. C. arts. 1894, 1900); and accordingly it should not be followed.
 

 IV.
 

 The evidence thus (correctly) received and considered by the Court of Appeal, shows that defendant, the purchaser of the land, paid the whole price thereof
 
 dÁrectty to the creditor
 
 who held the vendor’s lien and privilege on the property; the vendor, Woodward, never received any part of the purchase price, and it was never intended that he should. (The check was made payable to, and was collected by, Barham & Co., the holders of the vendor’s lien note.) Article 2161, R. C. C. (2157), reads as follows:
 

 Article 2161: “Subrogation takes place of right:
 

 “2. For the benefit of the purchaser of any immovable property, who employs the price of his purchase in paying the creditors, to whom this property was mortgaged.
 

 “3. * * *
 

 4 * * * >•
 

 This article is a literal translation of article 1251 of the Code Napoleon; and the commentators on that Code are unanimous, and the French jurisprudence uniform, that the article applies as well to conventional sales as to judicial sales. See Sirey, Code Civil Annote, art. 1251; Dalloz, ditto; Fuzier-Herman, ditto.
 

 They all agree, however, that the payment
 
 *625
 
 to the creditor,must be
 
 made with the money of the purchaser,
 
 either directly by the purchaser himself or by some one else (even the vendor) under his (the purchaser’s) instructions. Fuzier-Herman, art. 1251, Nos. 60-64. And in the case at bar the payment
 
 was
 
 made with the money of the purchaser, paid by himself directly to the purchaser.
 

 We have already said that we think we erred in Challe v. Ludeling and Abbeville Rice Mill v. Shambaugh, supra, in excluding parol evidence of the true consideration paid in those eases; but that evidence having been excluded and the parties held to the recital of the deed that the purchaser had paid the price in cash
 
 to the vendor,
 
 it followed of course that the incumbrances on the property were not paid with the money of the purchaser, but
 
 mth that of the vendor,
 
 received by him as the price of the sale.
 

 In Serapurn v. La Croix, 1 La. 373, the property appears to have been incumbered to the extent of $14,000, and was sold for $12,-000, of which the purchaser paid in cash to the vendor $6,000, and gave his notes for,the other $6,000, whereupon the vendor immediately paid off in cash the $14,000 incumbrance.
 

 The court held that the purchaser’s money became,
 
 eo instante,
 
 that he paid it to his vendor, the money of the vendor; and .that the incumbrance was paid with the money of the vendor and
 
 not
 
 with that of the purchaser.
 

 The ruling was highly technical, but strictly correct. It will be observed that the pur-, chaser made no payment, and never intended to make a payment, directly to the holder of the incumbrance. On the contrary, he paid and intended to pay directly to his vendor; and she, after receiving the $6,000 paid by the purchaser, added thereto
 
 $8,000 of her own money,
 
 and thus discharged the whole debt of $14,000. The court therefore correctly held that the incumbrance was discharged with the money of the vendor and not with that of the purchaser.
 

 That case is therefore readily distinguishable from the case at bar, wherein the purchaser paid directly his own money to the holder of the incumbrance in full without having at any time commingled his money in any way with money belonging to the vendor.
 

 And accordingly we think the case before us was correctly decided by the Court of Appeal in accordance with the principle announced in Hobgood v. Schuler, 44 La. Ann. 537, 10 So. 812, that—
 

 “A party who purchases property encumbered by mortgage and vendor’s hen, and employs the price in payment of the mortgage debt, becomes legally subrogated to the mortgage creditor’s right.”
 

 And:
 

 “An unauthorized cancellation of a mortgage may be re-instated on proper proceedings, taken contradictorily with the recorder and other mortgage, creditors.”
 

 And the decision is also in accord with the ruling of this court in Pugh v. Sample, 123 La. 791, 49 So. 526, 39 L. R. A. (N. S.) 834, that—
 

 “Whilst one cannot be, at the same time, owner and mortgagee of the same property, [yet] if the title which, apparently conveying perfect ownership, is supposed to destroy the mortgage, by confusion, turns out to be no title, or an imperfect title, the mortgage, which was suspended, and thus apparently destroyed, upon the assumption of perfect ownership, revives; the cause of its suspension and supposed destruction no longer existing. ‘The effect cannot have a longer duration than the cause.’ ”
 

 Decree.
 

 The judgment of the Court of Appeal is therefore affirmed.