GLADNEY, Judge.
This, a petitory action, was instituted by Felton G. Clark against the heirs of Sylvia Diggs seeking recognition of ownership of:
A certain tract or parcel of land situated in West Monroe, Ward 5 of Ouach-ita Parish, Louisiana, to-wit:
Commencing at the intersection of the South line of McMillan Road and the West line of North Seventh Street; run thence South 64 degrees 04 minutes West along the South line of McMillan Road a distance of 162.93 feet to the POINT OF BEGINNING PROPER; thence continue in the same direction South 64 degrees 04 minutes West a distance of 100 feet, thus establishing a frontage of 100 feet along the South side of McMillan Road; from said frontage as thus established, run back South 25 degrees 56 minutes East, between parallel lines, a distance of 606.57 feet; located in Section 43, Township 18 North, Range 3 East; and subject to the dedication of North Seventh Street over a portion thereof. Said Point of Beginning Proper also being the northwest corner of the lot sold by William G. Head to Mrs. Epsia E. Walton by deed dated March 3, 1899, and recorded in Conveyance Book 41, Page 136.
Plaintiff concedes that at the time of filing the suit defendants were in possession of the tract in dispute. Defendants deny the sufficiency of plaintiff’s title and plead the acquisitive prescription founded on Civil Code Article 3499. The prescriptive plea involves only that portion of the tract having a depth of 420 feet from the north section line (the center of McMillan Road).
The trial of the case resulted in a judgment favorable to plaintiff only to the extent of the south 216.57 feet of the property claimed; the decree further sustained the plea of prescription with recognition of the ownership of the north 390 feet of said property. Both sides have lodged appeals in this court.
Although plaintiff deraigned his title from the United States in an unbroken chain, certain transfers are attacked on the ground that the descriptions are insufficient to locate the property. These objections arise from the fact that when the property described as Lot Number 1 was transferred from the Hasley Estate, the deed, without identifying the section number, referred to a recorded plat by L. N. Polk, the parish surveyor, for more particularity. The objections to the sufficiency of plaintiff’s title are urged in assignments of error to certain rulings of the trial court. First, in permitting plaintiff, over timely objections, by extraneous evidence to establish the identity or description of the land described as “Lot One of the Hasley Estate”; second, in the admission into evidence contrary to objection of: a proces verbal of a partition of the estate of David Hasley; an inventory filed in the Succession of Mrs. Phinetta Hasley; and “Reasons for Judgment” from the record of “Clark v. McGuire, No. 56,342, on the docket of the Fourth Judicial District Court for Ouachita Parish”; and third, in permitting the witness, Lester High, a civil engineer, to testify to his opinions based upon evidence found in the record of Clark v. McGuire. The objections make the point that parol testimony is not admissible for the purpose of establishing title to immovable property, and further that defendants are in no wise bound by suit Number 56,342 to which they were not parties.
In discussing the objections so made the trial judge reasoned:
“ * * * One of plaintiff’s authors in title was William G. Head; and the only serious question raised as to plaintiff’s chain of record title relates to the location *564 of property described in a deed to Head as ‘Lot one of the Hasley Estate’, of which the contested property is allegedly a part. Certain of the deeds relied upon by plaintiff to trace his chain of title contained reference to this ‘Lot one of the Hasley Estate’ as shown more particularly on a plat of survey made by one L. N. Polk in 1879; but there is testimony in the record to the effect that no such plat of survey was ever recorded nor has one ever been found. Thus, there is no direct reference in the deeds composing plaintiff’s chain of title to the precise location of ‘Lot one of the Hasley Estate’.
“Over the objection of defendants, there were admitted into evidence other documents urged by plaintiff to support the testimony of a civil engineer in establishing the location of the property and completing plaintiff’s chain of title. One such document is a proces verbal of a partition of the Estate of David Hasley which includes as ‘Lot one’ of the property of that estate, a tract of land west of the Ouachita River in Ouachita Parish in Section 43, Township 18 North, Range 3 East.
“Another such document was an inventory filed in the Succession of Mrs. Phinet-ta Hasley, widow of David Hasley. Still another was an opinion or ‘Reasons for Judgment’ handed down by a judge of this Court on May 11, 1960 in another suit between different parties, wherein the judge decreed that ‘Lot one of the Hasley Estate’ was descriptive of that part of Section 43, owned by David Hasley, which lay south of Claiborne Road (U. S. Highway 80).
“Defendants’ objection was that these documents were immaterial and extraneous to plaintiff’s alleged chain of title, which objection was coupled with their contention that the descriptions of property conveyed in various other deeds in plaintiff’s chain were so vague and indefinite as to be insufficient to convey title. At the outset, it should be observed that defendants’ claim title to a tract adjoining the property now in litigation by conveyance from William G. Head to Sylvia Diggs and their inheritance from Sylvia Diggs. Accordingly, since defendants are in effect claiming that Sylvia Diggs possessed the questioned property in conjunction with that conveyed to her by Head, we find that Head was essentially a ‘common author in title’ of all parties to this suit. Moreover, since defendants rest their claim of possession within boundaries dependent upon the location of a corner of a lot sold by the same Head to one Epsia or Epsie Walton, and since Head acquired the whole larger tract in a deed describing it as ‘Lot one of the Hasley Estate’, less parts sold, it ill behooves defendants to question the relevancy of evidence seeking to establish the location of the Head property.
“In any event, because the references in plaintiff’s chain of title relating originally to land in Section 43 and later to land in ‘Lot one of the Hasley Estate’ are ambiguous and do not contain the entire description of the lands, we must resort to the well settled principle that information extraneous to the deeds themselves is admissible. The proces verbal of the petition to the estate of David Hasley was properly admitted to show the original recorded reference to ‘Lot one’ of Hasley’s land. The inventory from the Succession of Mrs. Phinetta Hasley was properly admitted to show its description of ‘Lot one’ as being all that part of Section 43 lying south of the Claiborne Road. The testimony of two civil engineers, one presented by plaintiff and one presented by defendants, revealed that such information was and is pertinent to engineers attempting to locate property; and it was clearly shown in the record that all titles in this area of Oua-chita Parish have been based upon the conclusion that ‘Lot one of the Hasley Estate’ did in fact constitute that portion of Section 43 lying south of Claiborne Road. The judgment and opinion by another judge of this court are not, of course, conclusively binding in this controversy; but the conclusion reached in that case by that judge reinforces this court’s conclusion from the evidence in this record that plaintiff has *565 adequately and properly proved the location of the property in his chain of title.”
Judge Garrett in his written reasons filed in the record of the District Court case of Clark v. McGuire, had this to say:
“ * * * Counsel for the defendants take the position that that part of the description where it recites ‘a more particular description of said tract can be seen by referring to a map made by L. N. Polk, parish surveyor in the year 1879, which said map is on file in this office with the papers in the Succession of Mrs. P. B. Hasley’ is not a sufficient description, as no map was ever introduced by the plaintiffs in this case. It is to be noted that the deed itself recites that such a map was on file in the records of Ouachita Parish on the 20th of February, 1911 (the date the deed was executed) and that this deed was drawn by W. S. Wright, Deputy Clerk of Court. The plaintiffs have offered evidence that they are unable to find this map referred to in the deed but they have been able to find on record in the Parish of Ouachita in the Succession of Mrs. P. B. Hasley, an inventory made under orders of the court by R. W. McClendon, Recorder (see Exhibit P-12) in which Lot No. 1 is described as being ‘all that part of Section 43 lying south of the Claiborne Road except such part as has been sold, containing 170 acres’. It is to be noted that Lot No. 1 refers to Lot No. 1 of the lots into which the Hasley Estate was divided in the Succession and does not refer to a particular lot in a particular block of any subdivision or plat. The Succession itself, as stated above, clearly shows what property was contained in Lot No. 1, to-wit: ‘that part of Section 43 lying south of the Claiborne Road except such part as has been sold, containing 170 acres’. By subtracting from the land in Section 43, lying south of the Claiborne Road, and those parcels which had previously been sold as per records in the Clerk’s Office of Ouachita Parish, it is seen that the description is one which can be followed in locating the land by any registered surveyor. Furthermore, there is ample testimony in the note of evidence, by various witnesses, that all surveyors who have made a survey of the property, are able to locate same from the records on file in Ouachita Parish. As stated by the Court previously, this deed, which the counsel for the defendants, the McGuires, claims is insufficient in description so as to convey property, is a deed under which both the plaintiffs and the defendants claim title * * * ”
The deed of acquisition by William G. Head described Lot No. 1 as containing 170 acres more or less without mention of Section 43 and referred to the L. N. Polk map as being filed in the Clerk’s office with the papers of the Succession of Mrs. P. B. Hasley. Thereafter Head made two sales which must be considered in explaining the ambiguity in the Clark title, these are the conveyances made by him to Epsia E. Walton in 1899 and to Mrs. Sylvia Diggs in 1915. The descriptions of the property acquired respectively by these two vendees are:
“Beginning at the North East corner of the Lot upon which Mrs. Sylvia Diggs lives on and running back South one hundred and ninety five yard (195), East fifty yards (50), North one hundred and ninety five yard (195) and thence fifty yards to place of beginning. The plot being an oblong square and containing two acres (2) Bound North by Flournoy Estate, west by Mrs. Sylvia Diggs and South and East by this vendor * * * ”
“A certain lot or parcel of ground in that certain tract of land formerly belonging to the Hasley Estate; said lot of ground herein conveyed, commencing one hundred (100) feet from the northwest corner of lot belonging to Epsy Walton, at an iron post or stake driven in ground; thence running in a westerly direction three hundred and fifteen (315) feet; thence running back in a southerly direction between parallel lines a depth of four hundred twenty (420) feet.”
*566 Explaining the descriptions in the Diggs deed which described the point of beginning as “commencing one hundred (100) feet from the northwest corner of a lot belonging to Epsy Walton, at an iron post or stake driven in the ground; thence running * * * ”, Lester High, a civil engineer, pointed out the absence of a call of direction in the description as it states the point of beginning. He concluded the only logical inference would be to fix the point of beginning at 100 feet west from the northwest corner of the Walton lot, and that by utilizing a different direction the description would encompass property already conveyed. This witness further testified that after eliminating the property contained in the parts sold from Lot 1 of the Hasley Estate, the 100 foot strip in controversy was still not separated therefrom by deed nor previously legally conveyed to anyone. By employing the extraneous evidence as adduced and the testimony of High, the property can be identified as the property in contest herein.
The cardinal rule relating to testimonial proof of title to immovable property is found in Civil Code Article 2276 which provides:
“Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since.”
In interpreting this article the Supreme Court of this state has long recognized the impossibility of adopting a standard for distinguishing a description which would be sufficient from one which would not be sufficient, in an act of sale of real estate, to put third parties on notice and that each case must depend on its own circumstances. Rouyer v. Harrison, La. App., 58 So.2d 753, 755 (1952). The allowance of parol testimony is not to contradict or reform a deed, but to show errors or omissions in the description of the property conveyed. In many instances such extraneous evidence is essential to establish the intention of the parties to the deed. When such evidence is resorted to the entire description should be considered in determining the identity of the land conveyed. Smith v. Chappell, 177 La. 311, 148 So. 242 (1933). Our courts have consistently followed the principle of law that:
“ * * * ‘a - deed will not be declared void for uncertainty in description if it is possible by any reasonable rules of construction to ascertain from the description, aided by extrinsic evidence, what property is intended to be conveyed. It is sufficient if the description in the deed or conveyance furnishes a means of identification of the land or by which the property can be located. * * * The maxim is “that is certain which can be made certain;” and the Courts lean against striking down a deed for uncertainty of description of the land conveyed, and a liberal rule of construction will be applied to uphold the conveyance’. 16 Am.Jur. 585-586, Deeds, sec. 262; see 26 C.J.S. Deeds § 30, p. 640; Tircuit v. Burton-Swartz Cypress Co., 162 La. 319, 110 So. 489; Smith v. Chappell, 177 La. 311, 148 So. 242; White v. Ouachita Natural Gas Co., 177 La. 1052, 150 So. 15; Snelling v. Adair, 196 La. 624, 199 So. 782; Hargrove v. Hodge, La.App., 121 So. 224.” [Blevins v. Manufacturers Record Publishing Co., 235 La. 708, 105 So.2d 392, 409 (1958).]
The foregoing authorities establish beyond doubt the propriety of reliance on the extraneous evidence which the court herein resorted to in order to explain the intention of the parties as to the missing call of direction in the descriptions. We concur in the ruling of the court to the effect that plaintiff established sufficient proof of ownership of the property in contest.
At the beginning of our discussion of the plea of prescription we refer to some established facts. Long prior to 1915 Sylvia Diggs lived on the lot she acquired from William G. Head. The existence of other *567 indicia of recorded title was not evidenced. In 1924 plaintiff’s ancestors in title acquired from Head the contested property situated between the Sylvia Diggs and Epsia E. Walton lots. Sylvia Diggs continued to live on her property from 1915 until her death which occurred between 1919 and 1922. Isaac Diggs and his wife Maude continued to occupy the house until 1941 when Isaac died. Maude Diggs stayed on in the house until her death in 1955. Some years later the house was torn down, no one having used it after the death of Maude Diggs. Five or six years prior to this suit in 1966 new fences enclosing the property were built by defendants. North Seventh Street when opened ran in a north-south direction and crossed at an angle the lower or south part of the Epsia Walton lot. McMillan Road, running generally east and west, was constructed in 1951, the middle line of this thoroughfare coinciding with the line common to Sections Forty and Forty-three. The heirs of Sylvia Diggs gave a thirty foot right of way off of the north side of the subject property which was identified as the “Diggs Estate” on the surveyor’s plat which accompanied this right of way deed. S. A. Huey, a registered civil engineer, filed of record in 1927 a plat which included a survey of the old Epsia Walton lot. This plat also designated the property in contest as that of “Mrs. Sylvia Diggs”. It should be recalled, however, that three years earlier Head had conveyed the subject property to ancestors in title of plaintiff.
The opening of McMillan Road and North Seventh Street brought improvements. Construction of McMillan Road, North Seventh Street and a filling station destroyed old fences and other vestiges and indications of boundary lines, particularly on the west and north sides of the property.
Although defendants assert adverse possession continuously from a date prior to 1903, Sylvia Diggs prior to 1915 did not possess as owner either the property on which she lived nor the adjacent property owned by William G. Head. By the 1915 deed she acknowledged the ownership of Head. Civil Code Article 3520 provides that the prescription does not run whenever the possessor makes acknowledgment of the right of the person whose title he prescribes.
A number of witnesses testified as to the nature of possession exercised by Sylvia Diggs and her successors in title. This testimony was not materially controverted. Eunice Anderson, born in 1898, testified that when she was about five years old she came to live with Sylvia Diggs, and except for a short period, lived there until Key Anderson returned from the military service. She has lived within a few blocks of the property ever since. She unquali-fiedly stated that her grandmother occupied and possessed as owner all of the property between the Diggs house and the Walton lot; that the house originally faced south but was later changed to face North Seventh Street when it was opened; that the entire property was cultivated until Isaac Diggs became too old to cultivate it; that during a portion of the time her husband raised hogs and had parts of the property under fence; and that as long as she could remember a water well was located on the property from which they drew their water.
Key Anderson affirmed the testimony of his wife and stated that all portions of the property between the Diggs lot and the Walton lot and northward to the line of the Bovenkleman property (McMillan Road) were cultivated until after the death of Sylvia Diggs; that after her death the cultivation was confined to little gardens raised by Isaac Diggs until he became too old to farm just prior to his death; and that for some years he kept hogs on the property and erected a house in which he cooked the hog feed. The testimony of other witnesses, including descendants of Sylvia Diggs and older residents supported that of Eunice Diggs and Key Anderson as to the nature of and the continuance of defendants’ possession.
*568 The trial judge concluded that Sylvia Diggs and her heirs possessed the land immediately adjoining the Diggs and the Walton lots and that this lasted beyond the death of Isaac Lee in 1941. He ruled that Sylvia Diggs and her heirs intended to possess and assert their ownership to the property in question through the granting of a right of way in 1951; and by the use, occupancy and possession of the property continuously until 1955.
The record is totally void of any opposition to such possession as was exercised by Sylvia Diggs and her descendants subsequent to 1915 and prior to the institution of this suit. The uncontroverted evidence appears sufficient to show that after securing a deed from William G. Head in 1915 Sylvia Diggs possessed the property with the intention of becoming the owner thereof. Although it is urged that the possession is insufficient in that there is no proof of enclosures on the south side of said property, we observe that the home occupied by Sylvia Diggs and by her son Isaac and others was near the southeast corner of her property and approximately within 100 feet of the home of Epsia Walton and the property in between was constantly used as a flower garden, for cultivation and for other purposes.
It is urged that if the prescription as owner began in 1915 the period of possession of 30 years would not be adequate until 1945 and that with the death of Isaac Diggs in 1941 there was no privity or legal connection between Maude Diggs who continued to live in the house on the Diggs lot after her husband’s death. We consider this argument without merit forasmuch as there is abundant evidence that the defendant heirs of Sylvia Diggs continued their possession of the property subsequent to Isaac Diggs’ death. In addition the testimony indicates they paid taxes on the property in question.
The cardinal principles of the requisites of the prescription of 30 years under Article 3499 are prescribed in the following articles:
“Art. 3500. The possession on which this prescription is founded must be continuous and uninterrupted during all the time; it must be public and unequivocal, and under the title of owner.”
“Art. 3501. The possession necessary for this species of prescription, when it has commenced by the corporeal possession of the thing, may, if it has not been interrupted, be preserved by external and public signs, announcing the possessor’s intention to preserve the possession of the thing, as the keeping up of roads and levees, the payment of taxes, and other similar acts.”
“Art. 3502. A man may even retain the civil possession of an estate, sufficient to prescribe, so long as there remain on it any vestiges of works erected by him, as, for example, the ruins of a house.”
“Art. 3503. How favorable soever prescription may be, it shall be restricted within just limits. Thus, in the prescription of thirty years, which is acquired without title, it extends only to that which has been actually possessed by the person pleading it.”
Beginning with the case of Prevost’s Heirs v. Johnson, 9 Mart, O.S., 123, 174 (1820), and followed in authorities cited in Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952), the Supreme Court recognized the rule prevailing in our jurisprudence that when a person claims by possession alone without showing any title, he must show an adverse possession by enclosures, and his claim will not extend beyond such enclosures. In Hill v. Richie, the court quoted approvingly from Saunders’ Lectures on the Civil Code:
“* * * In the thirty years’ prescription which is not hosed on title, the possession is called pedis possessio, foot possession; as there is no title to indicate the limits in which the possessor considers *569 his rights as owner to extend, his position is limited by the area over which he exercises actual possession. The cultivated fields would be the most obvious limits of possession but wood land or swamp land is susceptible of actual possession, only there is a great deal of difficulty in determining how far the owner intended his possession to extend, whether he intended it to extend as far back as he cut wood and carried it away for timber or for houses on the plantation, or as far as he extended his ditches and kept them in repairs. * * * (p. 138).”
The court therein recognized the well established rule that civil possession of the property is sufficient to maintain possession where it has been preceded by actual possession.
Although it is contended there was no enclosure on the south side of the property in contest, we think such a boundary was unnecessary in view of the doctrine established in Hill v. Richey, supra, and the nature of the possession shown with respect to the 390 feet south of McMillan Road.
For the foregoing reasons we find no error in the judgment appealed and accordingly it is affirmed.
It is therefore ordered, adjudged and decreed that the judgment from which appealed be affirmed and that plaintiff, Fel-ton G. Clark, be recognized as the lawful owner of the property hereinafter set forth, free and clear of any interest therein by defendants:
The South 216.57 feet of the following tract of land:
A certain tract or parcel of land situated in West Monroe, Ward 5, of Ouachita Parish, Louisiana, to-wit:
Commencing at the intersection of the South line of McMillan Road and the West line of North Seventh Street; run thence South 64 degrees 04 minutes West along the South line of McMillan Road a distance of 162.93 feet to the POINT OF BEGINNING PROPER; thence continue in the same direction South 64 degrees 04 minutes West a distance of 100 feet, thus establishing a frontage of 100 feet along the South side of McMillan Road; from said frontage as thus established, run back South 25 degrees 56 minutes East, between parallel lines, a distance of 606.57 feet; located in Section 43, Township 18 North, Range 3 East; and subject to the dedication of North Seventh Street over a portion thereof. Said Point of Beginning Proper also being the Northwest corner of the lot sold by William G. Head to Mrs. Epsia E. Walton, by deed dated March 3, 1899, and recorded in Conveyance Book 41, page 136.
It is further ordered, adjudged and decreed that the plea of prescription filed by the defendants herein be and is hereby sustained and accordingly there be judgment herein in favor of the said defendants, and against the plaintiff, declaring the defendants to be the owners of property hereinafter set forth, free and clear of any interest therein by the plaintiff:
The North 390 feet of the following parcel of land:
A certain tract or parcel of land situated in West Monroe, Ward 5, of Ouachita Parish, Louisiana, to-wit:
Commencing at the intersection of the South line of McMillan Road and the West line of North Seventh Street; run thence South 64 degrees 04 minutes West along the South line of McMillan Road a distance of 162.93 feet to the POINT OF BEGINNING PROPER; thence continue in the same direction South 64 degrees 04 minutes West a distance of 100 feet, thus establishing a frontage of 100 feet along the South side of McMillan Road; from said frontage as thus established, run back South 25 degrees 56 minutes East, between parallel lines, a distance of 606.57 feet; located in Section *570 43, Township 18 North, Range 3 East; and subject to the dedication of North Seventh Street over a portion thereof. Said Point of Beginning Proper also being the Northwest corner of the lot sold by William G. Head to Mrs. Epsia E. Walton, by deed dated March 3, 1899, and recorded in Conveyance Book 41, page 136.
It is further ordered that all costs be taxed against plaintiff.