2 So.2d 31

AUTHEMENT v. WEILL et al.

No. 36077.

March 31, 1941.

Rehearing Denied April 28, 1941.

Dart & Dart, of New Orleans, for appellant.

Cobb & Saunders and Harvey Peltier, all of New Orleans, and Hubert A. Lafargue, of Thibodaux, for appellee.

Gill & Simon and Spearing, McClendon & McCabe, all of New Orleans, amici curiae.

Joseph Merrick Jones, Harry P. Gamble, Jr., Selim B. Lemle, and Charles Kohlmeyer, Jr., all of New Orleans, amici curiae.

ROGERS, Justice.

This suit involves the title to a strip of land situated in Section 12, Township 19 South, Range 22 East, in Lafourche Parish. The land lies directly in the rear of the Town of Golden Meadow. The Golden Meadow oil field is situated in this section.

Plaintiff alleged that he acquired the property from his father and mother, Oscar Authement and Emelisa Breaux Authement, by act of sale executed in notarial form on January 26, 1918, and recorded in the conveyance office on March 6, 1918; that Mrs. Barbara J. Weill, under date of September 16, 1938, executed a notarial instrument in favor of Fred Shields, which instrument was recorded in the conveyance records of the Parish of Lafourche; that in this instrument Mrs. Weill agreed to transfer to Fred Shields a proportion of the undivided interest (20/48ths) which she claimed to own in the property; that the existence of the instrument on the public records constituted a cloud upon plaintiff's title which prevented plaintiff from enjoying, as owner, the benefit of the mineral development of his property, and that plaintiff was entitled to have the instrument

cancelled from the public records so far as it affects the property. The petition contains other allegations which it is not necessary to recite.

Mrs. Weill, in her answer, denied the allegations of the petition, and, in the alternative, alleged that she is the owner of an undivided interest in the property, which interest she acquired as the instituted heir of Dr. James B. Guthrie. The defendant then set forth the marital status of Dr. Guthrie, the manner in which she was instituted as his heir, and the chain of title on which she based her claim of ownership. She prayed that plaintiff's suit be dismissed, and, in the alternative, that she be decreed to be an owner of an undivided 20/48ths interest in the property.

Fred Shields, the other defendant, who was a resident of Texas, appeared personally and answered plaintiff's petition. He denied that the instrument referred to in the petition constituted a cloud on any property owned by plaintiff. He alleged that both Mrs. Weill and himself were owners of undivided interests in the property claimed by plaintiff. He set forth the same chain of title in support of his allegation of ownership as was set forth in the answer of Mrs. Weill. He also prayed that plaintiff's suit be dismissed, and that judgment be rendered recognizing his ownership and that of Mrs. Weill in the property, in the proportions as alleged in his answer.

The court below rendered judgment against the defendants, recognizing plaintiff to be the owner of the tract of land in dispute and decreeing the instrument executed by Mrs. Weill in favor of Shields to be void and that its inscription on the conveyance records be cancelled so far as it affects the property of plaintiff. Mrs. Weill has appealed from the judgment, but her co-defendant, Fred Shields, has not appealed.

In this court, the appellee has pleaded the acquisitive prescription of ten years, and the appellant has answered the appeal and prayed that the case be remanded for a trial on the issue of prescription as provided by the second paragraph of Article 902 of the Code of Practice.

Since we have reached the conclusion that plaintiff possesses the record title to the property in dispute, it is not necessary that we pass on appellee's prescriptive title and the appellant's demand to remand the case for trial on that issue.

The record shows the following facts: By deed executed on June 2, 1873, James B. Guthrie acquired from Stephen L. Griffin and William V. Griffin a tract of land described as follows:

"A certain tract of land situated in this Parish, on the right bank of Bayou Lafourche, at about 60 miles below the Town of Thibodaux, being in the upper part of Lot 12 of Township 19 South, Range 22 East, Southeastern Land District of Louisiana, west of the Mississippi River, said land to be measured as follows:

"Beginning at the corner of Lots (9 and 12) Nine and Twelve of said T. 19 along Bayou Lafourche S. 440 degrees E. 14 chains, thence S. 33 degrees E. 14 chains, to Drauzin Gaspard's upper line,

thence along said line S. 76 degrees 10 minutes west to the section line, thence N. 46 degrees E. back to the beginning & containing seventy-two acres and 38/100 of an acre."

By deed executed on February 18, 1874, James B. Guthrie acquired from Drauzin Gaspard a tract of land described as follows:

"A certain tract of land, situated in the Parish of Lafourche in this state, at about 60 miles below the Town of Thibodaux, and having a front of 4½ acres, on the Bayou Lafourche, by the whole depth between converging lines, and being bounded on the north by lands heretofore belonging to Stephen Griffin and now the property of said James B. Guthrie, and on the south by lands of said James B. Guthrie and containing about 40 acres all in T. No. 19 S. of R. No. 22 E. in the S.E. Land Dist. of La. in the said Parish of Lafourche * * *."

It is admitted by the parties litigant that the tract of land involved in this suit is included in the tract of land which was acquired by James B. Guthrie under the two above-mentioned deeds.

By deed executed on December 23, 1897, James B. Guthrie sold to Sheldon Guthrie property which was described in the deed as follows:

"1st. One certain tract of land situated in the Parish of Lafourche, on the right bank of Bayou Lafourche, about sixty miles below the Town of Thibodaux, comprising (a) certain land purchased by vendor from Stephen H. Griffin and William V. Griffin as per act of sale passed before Emile E. Le Blanc, Recorder of the Parish of Lafourche, on the Second (2nd) day of June, A. D. Eighteen Hundred and Seventy Three (1873) and (b) certain land purchased by vendor from Drauzin Gaspard as per Act of sale passed before Jas. Fahey, Notary Public, New Orleans, La., on the Eighteenth (18th) day of February, A. D. Eighteen Hundred and Seventy Four.

"The said tract of land composed of the two tracts of land 'a' and 'b' hereinbefore described is bounded on the upper side by land belonging to Messrs. Dillingham & Hunt, and on the lower side by land belonging to B. J. Morey and the estate of the late Frank Morey, and measures Fourteen (14) acres more or less front on Bayou Lafourche by Seven (7) acres in depth."

Tracts "a" and "b" form, together, an irregular-shaped tract of land, the lower portion of which has a depth greater than seven acres. The property involved in this lawsuit is a portion of tracts "a" and "b" situated more than seven acres from Bayou Lafourche.

Plaintiff contends that James B. Guthrie sold to Sheldon Guthrie all of lands "a" and "b". On the other hand, defendant contends that James B. Guthrie sold to Sheldon Guthrie only that portion of tracts "a" and "b" which is situated between Bayou Lafourche and a line parallel to the bayou and seven acres distant therefrom.

The record shows the following transfers of property: July 1, 1903, Sheldon Guthrie to Louis Bouvier; July 22, 1905, Louis Bouvier to Joseph Bruce; August 26, 1908, Joseph Bruce to Emile Bruce; No-

vember 6, 1909, Joseph Bruce to Alexis Lefort; November 6, 1909, Emile Bruce to Alexis Lefort; February 15, 1913, Alexis Lefort to Leonce J. Pitre; February 15, 1913, Alexis Lefort to Leonce J. Pitre; October 28, 1914, Leonce J. Pitre to Oscar Authement; October 28, 1914, Leonce J. Pitre to Mrs. Oscar Authement; March 8, 1918, Mr. and Mrs. Oscar Authement to Philocles C. Authement, the plaintiff in this case.

It appears from the record that James B. Guthrie was married but once and then to Clara Merrick Guthrie. Mr. and Mrs. Guthrie died, respectively, on August 30, 1882, and June 14, 1900, leaving surviving them as their sole heirs two children,— James B. Guthrie, Jr., and Clara Guthrie. James B. Guthrie, who died on March 8, 1932, was married twice. He left only one child, Mrs. Eleanor Guthrie Neff, as his forced heir, and Mrs. Barbara J. Weill, as his residuary and universal legatee. Mrs. Clara Merrick Guthrie, the sister of James B. Guthrie, Jr., died in 1937, leaving as her sole heirs two children, issue of her first marriage, she having been married twice.

The claim of title by Mrs. Weill rests on her contention that when he sold to Sheldon Guthrie, James B. Guthrie did not convey that portion of the tract of land which lay seven arpents in the rear of the portion that fronted on Bayou Lafourche. Obviously, the claim of title set up by Mrs. Weill must be rejected, if the conveyance by James B. Guthrie to Sheldon Guthrie embraces the designated frontage of the property with the title depth to the range line to the west and the rear of the frontage.

We think the trial judge, in his reasons for judgment, has correctly analyzed the three deeds to which James B. Guthrie was a party, namely, the two deeds by which he acquired the property and the deed by which he sold to Sheldon Guthrie. We quote, with approval, from his opinion showing his analysis of the deeds in question.

"Just what did J. B. Guthrie mean, when he started out by declaring that he was selling to Sheldon Guthrie a certain tract of land purchased from Stephen H. Griffin and William V. Griffin as per act of sale (before the parish recorder) June 2d, 1873?

"Just what did he mean when he next declared that he was 'selling a certain tract of land purchased from Drauzin Gaspard as per act of sale (before a Notary) on February 18th, 1874?'

"Manifestly, as regards these two declarations standing alone, the answer would be that he was tendering and conveying to Sheldon Guthrie the identical two tracts of land which he represents himself as having acquired by public act on June 2nd, 1873, and Feb. 18th, 1874, respectively. Otherwise, why the specific designation 'a certain tract of land acquired from a named vendor on a named date?'

"Isn't the language used equivalent to the declaration, 'I am selling and conveying to you the same land that I acquired from my vendor on the date named?'

"And doesn't the reference to his vendor, together with the name and title of Parish Recorder and officiating Notary, and the exact date of execution, supply the vendee and subsequent abstractors with ample data to enable them to ascertain with certainty just what land was then being conveyed to Sheldon Guthrie?

"The above indicated conclusion should stand, unless subsequent recitals in the same act clearly indicate and record a different intent.

"The only following recital is this:

"'The said tract of land composed · of two tracts of land 'a' and 'b' hereinabove described is bounded on the upper side by land belonging to * * * and on the lower side by land belonging to * * *, and measures fourteen acres more or less front on Bayou Lafourche by seven acres in depth.'

"Note that the language is 'the two tracts—hereinabove described'—Instead of declaring a 'change of description', they definitely persist in reiterating 'hereinabove described'. As already noted, the 'hereinabove described' can only mean 'The same lands that I acquired on June 2nd, 1873, and Feb. 18th, 1874.'

"Thereafter, the upper and lower boundaries are cited, together with the approximate frontage on Bayou Lafourche by seven acres in depth.

"Is or is not the last five words, 'by seven acres in depth', to be interpreted as meaning that the parties here and then intended to abandon their originally de-

clared intent to deal with the same tracts of land that J. B. Guthrie acquired on June 2nd, 1873, and Feb. 18th, 1874, as specifically declared in the 'Conveyance Clause' of their transaction?

"Even though they had not essayed to note the upper and lower adjoining owners, the frontage on the bayou, or ascribed any depth at all to the property * * * the land conveyed was sufficiently identified by the declarations of the 'Conveyance Clause' of their act.

"In the opinion of the court, the paragraph now under review was not inserted by the parties with any intent to limit the conveyance to any less land than the vendor had actually acquired from his cited vendees of June 2nd, 1873, and Feb. 18th, 1874.

"Having already declared that they were dealing with reference to the same lands so acquired by the vendor, the parties were, at this time, only attempting (perhaps at the suggestion or urging of the officiating Recorder or Notary) to conform to the usual custom of naming their boundarymen and approximating the dimensions of the tracts conveyed.

"The evidence, reinforced by the court's accumulated knowledge of the people and customs in that area, makes it 'appear very probable that these contracting parties at that time knew very little of the actual or even approximate depth of lands in that vicinity. The high lands elevated above the 'marsh level' were then the only lands esteemed as of any special value. At that point and in that neigh-

borhood, no such highland attained a depth of more than seven arpents from Bayou Lafourche * * * the most of them considerably less.

"Hence the insertion of only some depth to satisfy the completion of the act was probably a matter of indifference.

"It was particularly a matter of indifference to Sheldon Guthrie, who had just listened to J. B. Guthrie's declaration that he was conveying to him the same tracts of land that he had previously acquired from Stephen H. and William Griffin and from Drauzin Gaspard by public acts of date June 2nd, 1873, and Feb. 18th, 1874, respectively.

"Therefore, the conclusion is that, by virtue of his acquisition of Dec. 23rd, 1897, from J. B. Guthrie, Sheldon Guthrie acquired a good and enforceable title as against J. B. Guthrie, to the same lands that J. B. Guthrie acquired from his named vendors, the Griffins and Drauzin Gaspard, on June 2nd, 1873, and Feb. 18th., 1874."

█ As confirming the conclusion reached by the trial judge and as evidencing the understanding and intent of Sheldon Guthrie that he was acquiring the entire tract owned by James B. Guthrie, when Sheldon Guthrie sold to Louis Bouvier a portion of the property he conveyed to "the depth of confirmation." He also made the further declaration in the deed that: "The tract of land herein sold and conveyed being the lower seven acres front of the fourteen acres front which the present vendor Sheldon Guthrie acquired from James B. Guthrie on the 23rd day

of December 1897 said sale being composed of two tracts and noted as A & B of record in the Clerk's office, recorders department of the Parish of Lafourche, in C.B. 31, page 165."

Another circumstance which tends to explain the meaning of the description in the Sheldon Guthrie deed is the circumstance that the vendor, James B. Guthrie, when stating the names of the owners of the adjoining property, does not state the name of the owner of the property in the rear. James B. Guthrie was dealing with a tract of land almost triangular in shape, and he probably did not know if it had a rear line but he did know that the tract was bounded above by the property of Dillingham and Hunt and below by the property of B. J. Morey and the Estate of Frank Morey. However, it is clear that if he had intended to convey only a portion of tracts "a" and "b", he would have known that there was property situated in the rear thereof and that such property belonged to him. In order to construe Guthrie's deed as intending to convey only a portion of tracts "a" and "b", it is not only necessary to disregard his two specific declarations that he was conveying those tracts but it is also necessary to assume that when he named the owners of the property adjoining the consolidated tract he failed to state that it had a fourth boundary and that the owner of the property on the other side of that boundary was himself.

It is in evidence that in 1918 plaintiff took actual physical possession of at least a portion of the property when he leased

it to Ozeme Cheramie for agricultural purposes, that he continued his possession by leasing the property to Jean Greco in 1922 for the same purpose, and that later he actually took possession of the rear portion of the tract of land, through trappers, supervised by Harry Hunter, under plaintiff's direction.

James B. Guthrie sold the property in 1897. We think it is worthy of remark that for approximately forty years neither James B. Guthrie, nor his heirs, nor any other person asserting a title derived from him, claimed that they owned any portion of tracts "a" and "b". It was only after the land had become valuable for minerals, and after the defendant Shields had advised Mrs. Weill that she was entitled to claim the ownership of an undivided interest in the property that she, in conjunction with Shields, apparently conceived the idea of asserting the claim of ownership.

Whatever controversy might arise between the present plaintiff and persons claiming to own through or from Sheldon Guthrie, or his assigns in title, it is clear that the defendant, Mrs. Barbara J. Weill, claiming through and under James B. Guthrie, has failed to establish any interest in the property since she can have no greater interest therein than James B. Guthrie himself, if he were living at the present time.

For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., and LAND, J., absent.