## ARAB CORPORATION et al. v. BRUCE et al.

### Civ. A. No. 299.

District Court, E. D. Louisiana,
New Orleans Division.

May 14, 1943.

Jones, Flanders & Waechter, A. J. Waechter, Jr., Gamble & Gamble, Harry P. Gamble, Jr., Dart & Dart, H. Grady Price, Lemle, Moreno & Lemle, and Arthur A. Moreno, all of New Orleans, La., for plaintiffs.

Cobb & Saunders, Eugene D. Saunders, Harvey Peltier, all of New Orleans, La., McCoy & King and Alvin O. King, all of Lake Charles, La., Prowell & McBride, Jones T. Prowell, Charles J. McCabe, Gill & Simon, Warren M. Simon, and Charles H. Blish, all of New Orleans, La., Roland B. Howell, of Thibodeaux, La., and Milling, Godchaux, Saal & Milling, Roberts C. Milling, and Haywood H. Hillyer, Jr., all of New Orleans, La., for appellees.

BORAH, District Judge.

For the history of this litigation prior to the proceedings now before the court, see Authement v. Weill et al., 197 La. 585, 2 So.2d 31; Arab Corporation & Duneco, Inc., v. Bruce, et al., D.C., 39 F.Supp. 942; Id., 5 Cir., 129 F.2d 94, 97.

The present suit was instituted by plaintiffs for a declaratory judgment to remove cloud from title and for an accounting in damages as to a tract of land situated in the Golden Meadow Oil Field described as "all of Section 12, Township 19 South, Range 22 East, in Lafourche Parish,

Louisiana, less and excepting certain portions." [1]

The claim as set forth in the petition was that plaintiffs were the owners thereof having acquired by mesne conveyance from the heirs of James B. Guthrie, and his wife, Clara Merrick Guthrie by chain of title fully set out in the appendix to the pleading; that defendants had executed and caused to be registered certain recorded conveyances under which they are claiming rights adverse to plaintiffs' ownership of the property, thereby creating a cloud upon their title; that defendants have, and at all times have had, knowledge that neither plaintiffs nor those under whom they hold had ever sold or disposed of their interests in the property, but that on the contrary, they then owned them; that the defendants were in actual legal and moral bad faith and plaintiffs were entitled to have the instruments cancelled as clouds upon their title; that the Texas Company and the Bennett Oil Company had trespassed upon and drilled wells upon the property and had taken large quantities of oil therefrom and plaintiffs are entitled to an accounting. This pleading was later augmented by a supplemental complaint in which plaintiffs reiterated the allegations of their original complaint and further averred: that the property sold by James B. Guthrie to Sheldon Guthrie on December 23, 1897 constituted a sale of only that portion of Section 12 lying between Bayou Lafourche and the 7 acre line, said line being a line drawn parallel with Bayou Lafourche and 7 acres distant therefrom; that James B. Guthrie remained the owner of all of Section 12 lying west of the 7 acre line; and prayed for a declaration of their rights in the premises accordingly, and a judgment cancelling the defendants' acts and instruments.

To these pleadings the defendants filed motions to dismiss on the ground that the complaint, as amended, failed to state a claim upon which relief could be granted. These motions came on for hearing and were granted because this court was of the opinion that the Supreme Court of Louisiana had in Authement v. Weill, supra, on the face of the written instruments alone, construed the act of sale from James B. Guthrie to Sheldon Guthrie to have a certain and definite meaning as a matter of law. On appeal from the judgment sustaining the motions to dismiss and dismissing the complaint, the Circuit Court of Appeals found error and said: "We have carefully examined the Guthrie deed in the light of the discussion of it contained in the opinion of the Supreme Court of Louisiana and we are quite clear that as there construed the deed on its face was held to be ambiguous and subject to explanation, as to the intent of the parties and the meaning and effect of the deed, by resort to evidence aliunde." Accordingly the judgment was reversed and the cause was remanded for further proceedings consistent with the expressed view "that the construction of the crucial deed may not be undertaken on the pleadings alone but must await the light thrown upon it by the acceptance of evidence aliunde." In compliance with the mandate of the Court of Appeals further proceedings have now been had in keeping with an order of court which provides that the issue to be tried and determined at this time shall be limited to the effect of the plaintiffs' title.

---

[1] "(1)" (refers to a portion of Section 12 not involved in this litigation.)

"(2) That portion of said Section 12 described in the deed by James B. Guthrie to Sheldon Guthrie dated December 23, 1897, registered in the Conveyance Records of the Parish of Lafourche in Conveyance Book 31, page 161, said portion more particularly described in said deed as follows:

"'One certain tract of land situated in the Parish of Lafourche on the right bank of Bayou Lafourche about sixty miles below the Town of Thibodaux comprising (a) certain land purchased by vendor from Stephen H. Griffin and William V. Griffin as per act of sale passed before Emile E. LeBlanc, Recorder of the Parish of Lafourche, on the second day of June, A. D. Eighteen Hundred and Seventy three (1873) and (b) certain land purchased by vendor from Drauzin Gaspard as per act of sale passed before Jas. Fahey, Notary Public, New Orleans, La., on the Eighteenth (18) day of February, A. D., Eighteen Hundred and Seventy Four.'

"'The said tract of land composed of the two tracts of land 'A' and 'B' hereinbefore described is bounded on the upper side by land belonging to Messrs. Dillingham & Hunt, and on the lower side by land belonging to B. J. Morey, and the estate of the late Frank Morey, and measures fourteen (14) acres more or less front on Bayou Lafourche by seven (7) acres in depth."

The evidence offered to aid the court in the construction of the deed consists of the following surrounding facts and circumstances: The township plat in evidence shows that Section 12 has an area of 224.88 acres; a frontage on Bayou Lafourche of 20.04 arpents or 18.43 acres [2]; a depth on its upper line of 24.75 arpents or 22.77 acres; a depth on the center line dividing Section 12 into north and south halves of 25.60 arpents or 23.56 acres and a depth on the lower line of Section 12 of 25.52 arpents or 23.48 acres. It further shows that the rear line of Section 12 which is the west line of the township was never surveyed, and that the same situation existed with respect to the southern boundary. In fact the only surveying in Section 12 was 15 chains of the northern boundary run back from Bayou Lafourche. With respect to the physical situation existing on the ground the evidence shows that the highlands extend generally 5.96 acres from Bayou Lafourche and that the deepest point of the property was 23 acres from the bayou.

It is seemingly fair to assume that Sheldon Guthrie who lived in Lafourche Parish and J. B. Guthrie who lived in New Orleans were somewhat familiar with this area, having dealt with the property for more than twenty-five years, but the evidence does not support the conclusion that any of the parties dealing with the land in controversy including the Guthries had accurate information as to the area, shape and dimensions of the lands with which they were dealing.

On July 1, 1903 Sheldon Guthrie sold to Louis Bouvier a portion of the property and he conveyed with all legal warranties "to a depth of confirmation" declaring that "the tract of land herein sold and conveyed being the lower seven acres front of the fourteen acres front which the present vendor Sheldon Guthrie acquired from James B. Guthrie on the 23rd day of December 1897, said sale being composed of two tracts and noted as A & B, being of record in the Clerk's Office, Recorder's Department of the Parish of Lafourche, in C.B.No. 31, page 165." This act and conduct on the part of Sheldon Guthrie evidences his practical interpretation of the crucial deed. Also to be considered in this connection is the fact that on July 1, 1907 Sheldon Guthrie sold to Ines Pierce "a certain tract of land situated in the Parish of Lafourche, State of Louisiana, on the west bank of Bayou Lafourche, at about sixty miles or less below the Town of Thibodeaux, measuring seven (7) acres more or less on Bayou Lafourche by seven (7) acres in depth, bounded above by land formerly belonging to Chas. Dillingham and now belonging to Willie Achee and Felix Savoie, and below by land now belonging to Joseph Bruce. Together with all the buildings and improvements thereon, and all rights and privileges thereto appertaining. This sale includes all rights and privileges that the vendor herein has or may have to any land in and to the rear of the land herein sold and described hereinabove as far back and to the west range line in the rear of said property."

The assessment rolls of the Parish of Lafourche show that in the year 1897 James B. Guthrie was assessed with two tracts of land including the tract in controversy, which is described as the upper two-thirds of lot 12 and lot 20, T. 19 S. R. 22 E. and as containing 282 acres. James B. Guthrie paid the taxes on the lands assessed under each entry as evidenced by the word "paid" which the Sheriff was obliged to note in compliance with Louisiana law.

In the year 1898 which was the year following the transfer from James B. Guthrie to Sheldon Guthrie, Sheldon Guthrie was assessed with only 98 acres. The assessment rolls for subsequent years show that each time Sheldon Guthrie made a sale his vendee was assessed only with the frontage sold to a depth of 7 acres and that it was not customary to assess the back lands, and that it was only after the discovery of oil that Philoceles Authement caused the back lands to be assessed.

In the year 1898 the property assessed against James B. Guthrie is listed under entry numbers 3405 and 3406. James B. Guthrie paid the taxes on the lands assessed under entry No. 3405 but he did not pay the taxes on the lands assessed under entry No. 3406 which bears the penciled notation "erroneous" and describes the property as 184 acres—upper ⅔ of lot 12 and lot 20, T. 19 S. R. 22 E. In this connection it will be borne in mind that Section 77 of Act 170 of the Legislature of Louisiana for the year 1898 requires the Sheriff to account to the State Auditor for all taxes listed on the roll as due the State and the Levee Boards, and to make returns

---

[2] The term acre as used in the evidence is equivalent to 208.71 linear feet.

periodically to the Auditor showing moneys collected and those not collected; and that it was pursuant to this provision of law that the Sheriff on July 12, 1899 filed his return and deduction list with the State Auditor showing the amounts collected and the amounts not collected on the tax roll of 1898. On his deduction list there appears under the heading, Immovable Property, the following:

Guthrie, J. B — Erroneous — No such property
Acreage Tax    Atchafalaya Levee Tax    State Tax
                     10 Mills
    4.60              2.00                  1.20

And there can be no doubt but that this notation refers to the property in dispute and this becomes immediately apparent by comparing the assessment roll with the deduction list. Having in mind the presumption of right conduct on the part of public officials it is significant to observe in connection with these notations that Section 68 of the aforementioned act provides that a deduction can be allowed only upon an affidavit filed with the Auditor. A further link in the chain of circumstances tending to show that James B. Guthrie considered that he had conveyed the whole tract to his brother is evidenced by the letter which he received from the Tax Collector under date of October 20, 1898 which says:

"In regard to the two pieces of land assessed to you as per notices 3405 and 3406, the following is how they are described on the Tax Roll

3405, 254 Acres Lot 2, 3, 6, & 7 Sec. 8 & Lots 2 & 3 & NW¼ of NE¼ Sec. 17, T. 20 S. R. 22 E.

3406, 184 Acres Upper ⅔ of Lots 12 & Lot 20, T. 19 S.R. 22 E.

If you can tell which of these two pieces of land are yours I will accept Tax for same & advertise the other."

We come now to a consideration of the four letters that were received in evidence under the ancient document rule. On April 13, 1897 Sheldon Guthrie wrote his brother, James B. Guthrie, saying that he would arrange for the payment of the taxes on the property of James B. Guthrie, i.e. Big Tree, Labelle and Golden Valley. He wrote regarding the possible sale of land to Alexander Verdin and said "if he is ready we will pass the act and send it to you for your signature immediately." Later on he stated "I will try and send you the deed of donation for Big Tree and Labelle in a few days for your signature." Plaintiffs maintain that this letter is significant in that it

shows that Sheldon Guthrie was the one preparing the acts of sale for J. B. Guthrie. But the court believes that this is a strained and unwarranted construction of the letter.

On April 18, 1897 Sheldon Guthrie wrote to James B. Guthrie saying that he had taken up with the Sheriff the question of the payment of taxes and again referring to an act of donation he says: "The Notary here tells me that you must be the first to sign the act of donation, and that it would be better that the act should be made by the Notary before whom you sign. Therefore I enclose description by metes and bounds of Labelle and Big Tree. He (the Notary) has had a great deal of experience in locating, buying and selling land, and says that description by metes and bounds is best for this section." Then follows this statement: "I find among the papers you placed in my hands last January an act of sale by you to Samuel D. Moody dated 3rd of March 1874. Is there any record of retrocession to you? The sale included two-thirds of the Gaspard, and the whole of the Griffin land, now constituting the Labelle Place." It will be noted that this letter refers to an act of donation but instead of showing that Sheldon Guthrie was to prepare the act, it specifically states that it should be prepared by the notary before whom J. B. Guthrie was to sign. The letter also says that a description by metes and bounds of Labelle and Big Tree was enclosed but this description was not found among the papers exhibited for inspection at the trial and because this is the situation, the court will not infer that the description referred to in this letter is the description by metes and bounds that was inserted in the crucial deed.

Under date of September 20, 1897 Sheldon Guthrie again wrote James B. Guthrie in part as follows: "I send you herewith all your patents, and the Moody deed. You can make the deed to me at your leisure and for the consideration you may judge fitting, and I will go to New Orleans say in a month or two months from now to complete the transaction." This letter shows definitely that Sheldon Guthrie did not prepare the deed but that he requested his brother, a lawyer, to prepare the deed at his leisure.

We come now to the letter of July 8, 1900 which was written by Sheldon Guthrie to his nephew, J. Birney Guthrie subsequent to J. B. Guthrie's death. This letter is

identified in the record as Plaintiff exhibit 29 and reads in part as follows:

"I inclose herewith map and extract from a letter recd. from my late brother under date of Sept. 25 1899.

"Copy—'I own the whole of "Company Grove" which is enclosed in a blue line on the left descending bank of Lafourche having bought out Mrs. Morey half interest in Company Grove.

" 'That is all I own, having transferred to you lot No. 20 containing 147.50 or "Big Tree" on left bank, and the lands included in No 9 and the upper half and over of No. 12 on the right bank.

" 'The land sold to Harang lies in the lower part of the map enclosed in blue lines.

" 'As I make it out the Edith & Grace (Morey land) is comprised by about one half of the lower part of 12; Labelle comprising a little over the upper half of 12 and of No. 9. The Morey tract (E & G) also includes I think lots 1 & 2 of section 6, though those lots may have been sold years ago to Auguste Crappel'—

"The foregoing marked 'copy' is taken verbatim from my brother's letter of date. aforesaid.

"The tracts referred to as Big Tree and Labelle are those transferred to me. Big Tree comprises 6 acres more or less front on bayou Lafourche by 7 acres in depth say 42 acres. Labelle comprises 14 acres more or less front on Lafourche by 7 acres in depth say 98 acres.

"The transfer was made by private act. It is on file in the Recorder's office but have no copy of it. Was passed I think in October 1898.

"This map was mislaid for several years, and had not been found when transfer was made to me. Consequently there is no reference to lines of original survey, the lands being designated by metes and bounds well known and amicably established by the late S. F. Gard with the full knowledge and consent of all parties concerned in 1872–1874. These bounds have never been called in question. You will observe that in the above extract lot No. 20, or Big Tree is noted as containing 147.50 acres while I claim only 42 acres. This is because I did not care to pay taxes on over 100 acres of no value. The same is to be said of Labelle the other tract which comprised some 250 acres of which only 98 acres were transferred to me."

It is not practicable in a case of this magnitude to detail all of the evidence and we pass on to the discussion with the observation that the foregoing constitutes in the main the evidence that is deemed material in the interpretation of the deed. And with respect to the evidence as to which no reference is made, the court now states for the record that it has not considered Plaintiffs' exhibit 30, an unsigned copy of a letter erroneously received in evidence, and that it regards as immaterial that testimony which bears on the question as to whether or not the Guthrie heirs claimed ownership of this property prior to the institution of suit.

None of the public documents in evidence discloses an intention on the part of the parties to the act of December 23, 1897 that J. B. Guthrie should retain title to the lands in the rear of the seven acre line from Bayou Lafourche. The most that can be said with respect to the remainder of the evidence is that it is in even balance. The statement of James B. Guthrie that he conveyed all of Labelle is in irreconcilable conflict with the statement of Sheldon Guthrie that he conveyed to the depth of seven acres only. Both of these statements appear in Plaintiffs' exhibit 29, and if the court must choose between them in the interpretation of the deed there are cogent reasons which compel the court to accept the statement of James B. Guthrie. Where as here the deed is ambiguous there can be no doubt but that the practical construction given to the deed by the parties as evidenced by their conduct and acts tends strongly to show their intention. But to constitute a practical construction by the parties it ought to appear with reasonable certainty that the acts. were done with knowledge and in view of a purpose at least consistent with that to which they are sought to be applied. The acts and conduct of Sheldon Guthrie in conveying the rear lands by Notarial Acts tend strongly to show his intention and should be given weight by the court. On the other hand the mere statement by James B. Guthrie as to the meaning of the deed, not carried into effect by any act, does not show such a practical construction as should govern its interpretation.

The court is therefore of the opinion that plaintiffs' cause has not benefited by the extraneous evidence which was accepted at the trial, and what I am now about to say with respect to the admissibility of

Plaintiffs' exhibit 29 will not alter the situation in the least, though it may be of importance in the event of appeal. Plaintiffs insist that their exhibit 29 was properly received in evidence because it contains a declaration against the interest of declarant, who is the ancestor in title of the defendants. Defendants with equal vigor insist that the statements made by Sheldon Guthrie are hearsay and not admissible. Neither is right. In my judgment the parties have failed to consider the use which may properly be made of extrinsic evidence in the interpretation of a valid deed.

Having in mind the all important fact that a valid deed ambiguous on its face is before the court for construction only, let us proceed to inquire what use can properly be made of extrinsic evidence in aid of its interpretation. There can be no doubt but that the primary object in its construction is to arrive at the intention of the parties as expressed in the words of the deed. But the law has laid down certain rules declaring by what kind of proof in any given case the intention is to be ascertained, and there are but two possible sources of information—viz., the facts and circumstances of the case, and the intention of the parties as declared by them before, at, or after the making of the deed. All the extrinsic evidence that can be offered is thus divisible into two classes and this division of extrinsic evidence not only exists in the nature of the case, but is of the utmost practical importance in the interpretation of all legal instruments, as the rules for the admissibility of the two kinds of evidence are not the same. As to the first class, evidence of the surrounding facts and circumstances is always admissible in aid of the interpretation of all legal instruments. Smith v. Chappell, 177 La. 311, 323, 148 So. 242. However declarations of intention are receivable in evidence only in the case of equivocation, that is, where the words in the instrument describe well but equally well two or more persons or two or more things. Patch v. White, 117 U.S. 210, 211, 217, 6 S.Ct. 617, 29 L.Ed. 860; Hill et al. v. Felton, 47 Ga. 455, 467, 15 Am.Rep. 643; 20 Am.Jur. 996, par. 1142. It is plain that the description in the crucial deed is not equally applicable in all its parts to two things, and consequently this is not a case of equivocation and declarations of intention on the part of James B. Guthrie and Sheldon Guthrie as to what they had done or designed to do by this deed or as to the meaning of its language, come within the rule of exclusion and are not to be received in evidence. Restatement of the Law of Property, Vol. III, Ch. 18, Sec. 242, p. 1206.

The evidence adduced at the trial seemingly negatives the idea that it was the legal intention of J. B. Guthrie to retain title to any part of the tract though it must be conceded that the evidence does point one way and then the other. It is so closely in even balance and so inconclusive and devoid of certainty that it cannot be considered as of material aid to the court in the construction of the deed. This being so, this case is apparently governed by the general rule of construction which provides that when the parts of a deed are so radically repugnant that there is no rational construction that will render them effective and accordant that the earliest clause will stand and the last be rejected. And especially should the rule be applied where as here the later provision, if given effect, would completely alter the principal terms of the deed which has previously been clearly set out. See Restatement of the Law of Property, Vol. III, Ch. 18, Sec. 246, p. 1237.

In Authement v. Weill, supra, it was held that the deed from James B. Guthrie to Sheldon Guthrie conveyed all of the land in question and that the persons holding under James B. Guthrie had no interest therein. The plaintiffs hold under James B. Guthrie and are seeking by this action to have rights recognized which the Supreme Court of Louisiana has held do not exist. While Authement v. Weill is not conclusive on this court, yet the holding of the Supreme Court of Louisiana construing the Guthrie deed should only be departed from because of compelling reasons, in view of the confusion and uncertainty of titles that would result from a different determination as to the validity of the title to land, depending upon the accidental circumstance as to whether the action was instituted in a state or federal court of the locality where the land was situated. This court in the exercise of its independent judgment is unable to assign any reason that would justify a departure from the holding of the Supreme Court of Louisiana but firmly believes that there is every reason why the construction given the Guthrie deed in Authement v. Weill should be followed. Therefore, the court finds on the issue submitted that

356

plaintiffs have no title or interest in the property in dispute and that their actions should be dismissed. The clerk is directed to enter judgment accordingly.